Carolyn E. ADAMS, Appellant,

v.

UNITED STATES, Appellee.

Mark A. CHAPPELL, Appellant,

v.

UNITED STATES, Appellee.

Bruce E. DENT, Appellant,

v.

UNITED STATES, Appellee.

Nos. 87–549, 87–632 and 87–654.

District of Columbia Court of Appeals.

Argued Nov. 17, 1988.
Decided May 17, 1989.

Stephen D. Scavuzzo, appointed by this court, for appellant Adams.

Dennis M. Hart, appointed by this court, for appellant Chappell.

Roger C. Wesley, appointed by this court, for appellant Dent.

Saul M. Pilchen, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., Michael W. Farrell, Elizabeth Trosman, and James F. Rutherford, Asst. U.S. Attys., were on the brief, for appellee.

Before NEWMAN, FERREN and STEADMAN, Associate Judges.

STEADMAN, Associate Judge:

This case involves an altercation in which appellants Dent, Chappell and Adams, each

armed with a different weapon,[1] beat and injured complainant Herndon. Appellants Dent and Chappell were each convicted of two counts of assault with intent to kill while armed (AWIK) and one count of simple assault. The dual AWIK counts consisted of one count predicated on an aiding and abetting theory (Dent aiding and abetting Chappell's assault with brass knuckles; Chappell aiding and abetting Dent's assault with a metal pole), and one count based on the act for which each was the principal. The simple assault conviction was based on the aiding and abetting of Adams' assault with the wooden board. Appellant Adams was likewise convicted under an aiding and abetting theory as well as for her own act, but instead of two counts of assault with intent to kill while armed, the jury found her guilty of the lesser included offense of two counts of assault with a dangerous weapon (ADW), and one count of simple assault for her use of the board.

■ Among them, appellants have raised a number of points on appeal. Because we agree that the trial court erred in denying a self-defense instruction,[2] we reverse and remand for a new trial.

### I.

"As a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Mathews v. United States*, 485 U.S. 58, 108 S.Ct. 883, 887, 99 L.Ed.2d 54 (1988) (citations omitted); *see, e.g., Graves v. United States*, 554 A.2d 1145 (1989); *Gray v. United States*, 549 A.2d 347, 349 (D.C.1988); *Stack v. United States*, 519 A.2d 147, 154 (D.C.1986). In determining whether a defense instruction was properly denied, we review the evi-

dence in the light most favorable to the defendant. *Richardson v. United States*, 131 U.S.App.D.C. 168, 169, 403 F.2d 574, 575 (1968). While mindful that trial judges properly deny instructions which require the jury to engage in "bizarre reconstruction[s] of the evidence," *Wood v. United States*, 472 A.2d 408, 410 (D.C.1984), here no such convolutions of logic are necessary to make a self-defense theory tenable.

At numerous points in his testimony, appellant Chappell stated that complainant Herndon had a knife and appeared ready to use it. *E.g.,* Herndon "pulled out the hawk bill knife and he got physical"; Herndon "pulled out a hawk bill knife and said what he would do to us"; Herndon "came up with the knife like he was going to cut us"; "He came [with the knife] toward all three of us"; "He came back out with the knife again and come toward us. I hit him again, get him off me so he wouldn't cut me with the knife...."; "He came up towards us with the knife, had the knife in a position like he was getting ready to hit somebody." Asked whether he had "any fear of being struck by [the] knife", Chappell responded that he did, stating further that his purpose in hitting Herndon was "[b]ecause he known to stab people with the knife or shoot somebody." Furthermore, several witnesses testified as to Herndon's reputation for violence, particularly when he had been drinking.

■ The trial court appears to have been troubled by a seeming inconsistency between a defense posture based on a denial that weapons were used at all and one based on self-defense. However, mere inconsistency between defenses does not constitute a proper basis for the denial of a defense instruction. *Mathews v. United States, supra,* 108 S.Ct. at 888; *Gray v. United States, supra,* 549 A.2d at 349 n. 2 ("a defendant is entitled upon request to an

1. Chappell's weapon consisted of brass knuckles; Dent used a metal pole; Adams brandished a wooden board. While the pole and board were introduced into evidence, the brass knuckles were never recovered.

2. Besides the issue of merger, discussed *infra* p. 351, the only remaining argument that we need address concerns the issue of insufficiency of evidence. Appellants Dent and Chappell con-

tend that there was insufficient evidence to sustain their convictions for assault with intent to kill. We find this claim meritless. Complainant Herndon testified that both men told him that they were going to kill him. Furthermore, Dent and Chappell each struck Herndon repeatedly and forcefully about the head using dangerous metal weapons.

instruction on any issue fairly raised by the evidence, regardless of whether it is consistent with the defense theory of the case or the defendant's testimony"). Indeed, the government in its brief concedes that the trial court based its denial of the instruction on erroneous grounds, noting that "[e]ven if the self-defense instructions had been inconsistent with Chappell's testimony, the instructions should have been given because defense instructions need not be consistent with defense testimony or even with the defense trial theory as long as they are fairly supported by the evidence." The government contends, however, that although the "trial court's reasoning ... was erroneous," the failure to give the requested instruction was nonetheless proper "[s]ince there was no evidence tending to show reasonable acts in self-defense." We disagree. As we have noted, the record is replete with references "tending to show ... self-defense," and we fail to see how these multiple references constitute "no evidence."[3] Therefore, since Chappell's testimony provided a sufficient factual predicate for a theory of self-defense, we hold that the jury should have been furnished with a self-defense instruction.

## II.

■ We further hold that denial of the instruction constitutes reversible error as to all three appellants. The government contends that appellant Chappell did not properly preserve the issue for appeal because he abandoned his request for a self-defense instruction. We disagree. We do not see in the transcript of the colloquy with the trial court a sufficient indication that Chappell's counsel was abandoning his desire for the instruction such as to eviscerate his initial two unequivocal requests.[4]

■ Adams' trial counsel, on the other hand, while joining in the original request for a self-defense instruction and playing an active part as a proponent in the discussion (arguing a defense of third-parties theory), subsequently responded in the affirmative to an inquiry from the trial court that he was "no longer requesting self-defense."[5] While this remark in a contextual reading might also be found less than totally conclusive, reversal is warranted in any event. Adams' conviction on the two counts for assault with a deadly weapon was predicated on an aiding and abetting theory (aiding and abetting Dent's assault with the metal pole and Chappell's assault with the brass knuckles). Were the self-defense instruction to have been given, a jury might have believed that Dent and Chappell acted reasonably in self-defense, thereby negating a finding that they committed any criminal act. In order to convict for

---

**3.** Although the government did not argue the point, we note further that the actions of appellants cannot be characterized as excessive as a matter of law. *Cf. Fersner v. United States,* 482 A.2d 387, 393 (D.C.1984) (appellant used excessive force as a matter of law when victim hit thirteen times on head with sharp side of hatchet; therefore failure to give defense of others instruction not error).

**4.** The government finds the purported abandonment in a colloquy that took place the next morning. The trial court proposed that the jury could be instructed that "[i]f you find no more than an assault with fists, you should find the defendants not guilty," adding "I mean in a sense, Mr. Pickens [Chappell's counsel], that's better than a self-defense instruction." Chappell's counsel responded "I'm not going to—no, I don't have any argument with what you say, your Honor." While subsequently only Dent's counsel yet again briefly raised the self-defense issue, we simply cannot say that, given the rather confused and extended exchange over the

instructions involving several different counsel and given the absence of any incompatibility between the trial court's proposed instruction and a self-defense instruction, the remark of Chappell's counsel taken in context sufficiently evidenced an abandonment of his request for a self-defense instruction.

**5.** All three parties originally sought a self-defense instruction. Following a lengthy discussion in which it indicated its reasons for being adverse to granting the request, the trial court concluded the day's session by again asking the parties' positions. Counsel for both Chappell and Dent reasserted their wish for a self-defense instruction; Adams' counsel, however, responded "[t]hat's correct, Your Honor" to the court's query "is it your position you are no longer requesting self-defense?" The reason for this change of position is not clear. It may have been in response to the trial court's observation that self-defense was inconsistent with the parties' other positions.

aiding and abetting, the government must show that "the act constituting the offense was in fact committed by someone." *Gray v. United States*, 104 U.S.App.D.C. 153, 154, 260 F.2d 483, 484 (1958) (*quoting Meredith v. United States*, 238 F.2d 535, 542 (4th Cir.1956)); *Strickland v. United States*, 332 A.2d 746, 749 (D.C.), *cert. denied*, 423 U.S. 846, 96 S.Ct. 84, 46 L.Ed.2d 67 (1975). Since a jury properly instructed on the theory of self-defense may have found that Dent and Chappell's behavior was not criminal, we cannot sustain Adams' convictions based on their acts. *See Shuttlesworth v. Birmingham*, 373 U.S. 262, 265, 83 S.Ct. 1130, 1132, 10 L.Ed.2d 335 (1963) ("there can be no conviction for aiding and abetting someone to do an innocent act.").

We also reverse Adams' conviction for simple assault. The affray consisted of three actors and three different weapons, but, as the government concedes, it nonetheless constituted a single continuous event. *See Glymph v. United States*, 490 A.2d 1157, 1160–61 (D.C.1985). In discussing the issue of "merger," *see Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), the government's brief notes that "the government's evidence established one continuous joint assault ... [t]he government never argued that each appellant's conduct constituted a separate assault, and the jury was never so instructed." Since the evidence established "one continuous joint assault" rather than distinct offenses, the government acknowledges that the multiple sentences were erroneously rendered in violation of the Double Jeopardy Clause.[6] With the conduct of all parties thus concededly interwoven into a single joint event, and with all of her co-participants and two of Adams' convictions subject to reversal, we think it only "just in the circumstances," D.C.Code § 17–306 (1981), to reverse on the simple assault count as well. *See Gethers v. United States*, 556 A.2d 201, 205 (D.C.1989) (appellate court may affirm conviction on one count of an indict-

ment despite reversing another count only if they relate to separate and distinct crimes).

*Reversed and remanded.*

---

6. Since we are reversing for a new trial, the government's proposed cure, that we remand with instructions that the trial court "vacate two of each appellant's three convictions and ... resentence on each ... remaining conviction," is inapposite.