Lyman **REID**, Jr., Appellant,

v.

**UNITED STATES, Appellee.**

No. 87–682.

District of Columbia Court of Appeals.

Argued March 22, 1990.
Decided Oct. 11, 1990.

---

Lee H. Karlin, Washington, D.C., appointed by the court, for appellant.

Anthony P. Farley, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and

John R. Fisher and Eileen Mayer, Asst. U.S. Attys., were on the brief, for appellee.

Before ROGERS, Chief Judge, BELSON and STEADMAN, Associate Judges.

BELSON, Associate Judge:

Lyman Reid, Jr. challenges his conviction for possession of a prohibited weapon (knife) in violation of D.C.Code § 22–3214(b) (1989) and presents several issues for review, including: 1) whether the evidence on specific intent was sufficient to sustain his conviction; 2) whether the trial court erred in failing to suppress a statement made by Reid to a police officer because the interchange constituted custodial interrogation without *Miranda* warnings; 3) whether the trial court improperly instructed the jury on the specific intent element of the offense; and 4) whether Reid was improperly denied a self-defense jury instruction by the trial court. Because we conclude that with respect to Reid's specific intent to use the knife unlawfully appellant was erroneously denied jury instructions that explained what relevant uses are unlawful in the District of Columbia, we reverse and remand this case to the trial court for further proceedings consistent with this opinion.

## I.

While on routine canine patrol in the Third District on July 22, 1985, Officer Gary R. Clearwater, a canine technician with the Metropolitan Police Department and an 11–year veteran of the police force responded to a radio run to the effect that two men and a woman were fighting with knives at approximately 5:45 p.m. in the vicinity of 7th and S Streets, N.W.[1] As Officer Clearwater approached the scene at the mouth of an alley and on the sidewalk along 628 S Street, N.W., he observed appellant "facing four or five other people with a knife in his right hand in a very threatening manner with a look like he was arguing with them."

The uniformed officer exited his marked police canine car unaccompanied by any other police officers, drew his service revolver and held it to his right side next to his leg as he ordered Reid to drop the knife. Reid then turned toward Officer Clearwater with the knife still in his hand. The Officer again ordered Reid to drop the knife. Officer Clearwater and Reid were then approximately 14–17 feet apart. Reid dropped the knife to the sidewalk and Officer Clearwater retrieved it. Officer Clearwater then re-holstered his service revolver.

Officer Clearwater then asked Reid "what he was doing with the knife and what has happening." Reid responded: "I'm going to show these motherfuckers they don't be fucking with me. I'll fuck them up."[2] Reid then "started yelling towards the people that were there, just becoming very disorderly." Officer Clearwater thereupon arrested Reid.[3] Officer John Timbers, who arrived at the scene after Reid was arrested, transported Reid to the police station.

At trial, Reid presented two witnesses who testified in his behalf. Donald Watts testified, *inter alia*, that he and Reid were

---

1. Officer Clearwater's testimony was essentially the same at both the motions hearing and at the trial. We will mention any noteworthy differences. One difference of limited significance is that the trial court at the motions hearing made findings based on Officer Clearwater's testimony that the radio run stated that one man and one woman were fighting with knives. At trial, however, after listening to the radio run again, Officer Clearwater testified that the radio run reported that *two* men and one woman were fighting with knives. Officer Timbers who transported appellant to the police station after his arrest by Officer Clearwater also testified that the radio run had stated that there were two men and one woman fighting with knives. This discrepancy does not affect the legal issues raised on appeal.

2. Reid's motion to suppress this statement was denied after a hearing at which Officer Clearwater was the sole witness. Officer Clearwater gave a slightly different version of this statement at the motions hearing, testifying that Reid said: "that he was going to show these motherfuckers that they weren't going to be fucking with him or he would fuck them up."

3. The officer testified that he arrested appellant for possession of a prohibited weapon.

playing with knives on July 22, 1985, when several officers in plain clothes grabbed Reid. Watts also testified that he carried a knife for protection and work. Emma Johnson, the other defense witness, testified that she hosted a barbecue in her yard on July 22, 1985, at 626 S Street, N.W. but admitted during cross-examination by the government that Reid was not a guest at her party. She also testified that she knew Reid and Watts and had seen them together often, and knew that Reid had stayed on occasion at 626 S Street, N.W., at the home of Johnson's across-the-hall neighbor, Mr. Woods.

At the conclusion of trial, the jury found that Reid was guilty of carrying a knife in the District of Columbia with the intent to use it unlawfully against another in violation of D.C.Code § 22–3214(b) (1989). After Reid was sentenced, he filed a timely notice of appeal.

## II.

We first address Reid's sufficiency of the evidence argument. Reid contends that the government failed to adduce evidence at trial sufficient to prove beyond a reasonable doubt that he possessed the knife with the intent to use it in an unlawful manner against another in violation of D.C.Code § 22–3214(b) (1989) ("PPW(b)"). According to Reid, the only inference the jury could have drawn from the evidence presented by the government concerning Reid's alleged specific intent to use the knife unlawfully was that Reid had the intent to use the knife in an "assaultive manner." He further argues that the government failed to prove either an attempted-battery assault or an intent-to-frighten assault. Reid asserts that the absence of evidence surrounding Reid's display of the knife is a void from which an inference of his specific intent to use the knife unlawfully cannot be drawn.

The government contends that the evidence at trial, when viewed in the light most favorable to the government, amply supports the inference that Reid possessed the specific intent to use the knife unlawfully against another. The government argues that it was not required to prove all the elements of assault in order to prove the PPW(b) offense because assault and PPW(b) constitute separate crimes. The government asserts that the testimony of Officer Clearwater that he observed Reid "facing four or five other people with a knife in his right hand in a very threatening manner with a look like he was arguing with them," and that Reid responded to the officer's inquiries by saying "I'm going to show these motherfuckers they don't be fucking with me. I'll fuck them up," is sufficient to prove that Reid intended to use the knife unlawfully against another, impliedly in an intent-to-frighten assault.

The elements constituting a violation of D.C.Code § 22–3214(b) are well established.[4]

> It is clear from the face of the statute that the government must establish not only that the accused possessed a proscribed article, but also that he possessed it with the intent to use it unlawfully against another. As an example ..., the statute clearly does not forbid the mere possession of an imitation pistol, but it is equally apparent that the provision does forbid the possession of such an imitation pistol with intent to use it in an assaultive or otherwise unlawful manner.

*United States v. Brooks*, 330 A.2d 245, 246–47 (D.C.1974) (footnote omitted). As in the imitation pistol example quoted from *Brooks*, the intent to use a prohibited weapon, in this case a knife, must also be "in an assaultive or otherwise unlawful manner." *Id.* at 247. "It is axiomatic that the burden rests on the government to prove beyond a reasonable doubt all elements of an offense, and there is no reason to assume that § 22–3214(b) admits of any exception to this basic principle." *Id.* at 246 n. 1. *See also In re Winship*, 397 U.S.

---

**4.** D.C.Code § 22–3214(b) (1989) provides:

No person shall within the District of Columbia possess, with intent to use unlawfully against another, an imitation pistol, or a dagger, dirk, razor, stiletto, or knife with a blade longer than 3 inches, or other dangerous weapon.

358, 364, 90 S.Ct. 1068, 1072–73, 25 L.Ed.2d 368 (1970).

■■■ Although we find this issue of sufficiency of the evidence concerning Reid's intent to use the knife unlawfully a relatively close one, when we view the evidence admitted through the testimony of Officer Clearwater in the light most favorable to the government, allowing for all reasonable inferences in the government's favor as we must, *Irick v. United States,* 565 A.2d 26, 30 (D.C.1989) (citing *Stack v. United States,* 519 A.2d 147, 159–60 (D.C. 1986)), we find the evidence adequate to sustain Reid's conviction. *See Jones v. United States,* 401 A.2d 473, 475–76 (D.C. 1979); *Curley v. United States,* 81 U.S. App.D.C. 389, 392–93, 160 F.2d 229, 232–33, *cert. denied,* 331 U.S. 837, 67 S.Ct. 1512, 91 L.Ed. 1850 (1947). We agree with the government that it did not need to prove all the elements of an assault in order to make out its *prima facie* case of PPW(b). *See Jones v. United States, supra,* 401 A.2d at 475–76; *United States v. Brooks, supra,* 330 A.2d at 247 ("assaultive or otherwise unlawful manner").

### III.

Reid contends that his motion to suppress his pre-arrest statement to Officer Clearwater should have been granted. Officer Clearwater was the sole witness at the hearing on the motion. The trial court credited his testimony and found that Clearwater's questions to Reid after the officer was confronted with a possibly dangerous and ambiguous street situation were investigatory in nature and thus permissible under *Miranda.*[5] Consequently, the trial court denied Reid's motion to suppress.

■■■ This court's review of the trial court's denial of a motion to suppress evidence is limited. *Lawrence v. United States,* 566 A.2d 57, 60 (D.C.1989). This court will not disturb the trial court's findings of fact unless they are clearly erroneous. *Id.* Whether, on the duly established facts, Reid was subjected to custodial interrogation without the benefit of *Miranda* warnings, however, is a question of law. Accordingly, this court independently reviews the trial court's decision whether the statement was the result of custodial interrogation, "giving due deference to the trial court's findings of fact concerning appellant's encounter with the police." *Richardson v. United States,* 520 A.2d 692, 696 (D.C.), *cert. denied,* 484 U.S. 917, 108 S.Ct. 267, 98 L.Ed.2d 224 (1987). *See also Miley v. United States,* 477 A.2d 720, 721 (D.C. 1984).

■■■ As the trial court found, when Officer Clearwater came upon the street scene in response to a radio run about a man and woman fighting with knives, he found Reid at the mouth of an alley along 628 S Street, N.W., facing four to five others and holding a knife in a menacing manner. The trial court found that upon approaching the group in his marked patrol car and in uniform, the officer "wasn't sure what the scenario of events was here, he still wasn't sure who was to blame for what. And before he took any precipitous action in making any arrests, he wanted to find out a little more about what was going on." Although the police officer drew his gun to protect himself and held it down by the side of his right leg as he approached Reid and the opposing group of four or five, the trial court found that he did not point the gun at Reid or threaten him with it. The trial court also found that the officer used "no physical force or restraint" on Reid even while finding that Reid was not free to leave at the time the officer asked him the questions. After Reid dropped the knife in response to the officer's two requests that he do so, Officer Clearwater retrieved the knife and re-holstered his gun before asking Reid "what he was doing with the knife and what was happening." The officer followed this course, he said, because he did not know at that point whether Reid had committed a criminal offense or whether he was defending himself.

In response to the questioning by the officer, Reid responded: that he was "going to show these motherfuckers that they

5. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1986).

weren't going to be fucking with him or he would fuck them up." It is that statement that Reid sought to suppress. The trial court found that this "mouthing off" by Reid led Officer Clearwater to believe that Reid was dangerous and was in fact a "provoker" in this "street situation" that was originally "susceptible of uncertainty." In addition, shortly after making that statement to police but prior to his arrest, Reid "started yelling towards the people that were there, just becoming very disorderly." Thereafter, Reid was arrested.

The trial court's fact-finding is amply supported by the record. Given the facts as found, we hold that the trial court did not err in denying Reid's motion to suppress his response to the officer's query about why he had the knife and what was happening. *See Hairston v. United States*, 500 A.2d 994, 997 (D.C.1985); *Ford v. United States*, 376 A.2d 439, 442 (D.C. 1977); *Allen v. United States*, 129 U.S. App.D.C. 61, 63–64, 390 F.2d 476, 478–79 (1968).[6] We also hold that Officer Clearwater's questions posed to Reid shortly after he dropped the knife did not constitute custodial interrogation in contravention of *Miranda;* instead, these questions were of the on-the-scene investigative genre permissible under *Miranda* and its progeny. *See Miranda v. Arizona, supra,* 384 U.S. at 477–78, 86 S.Ct. at 1629–30 ("General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding."); *Allen v. United States, supra,* 129 U.S. App.D.C. at 63–64, 390 F.2d at 478–79. (inquiry "to screen crimes from relatively routine mishaps" permissible as part of on-the-street investigation, even though citizens subjected to some detention even in that kind of investigation). *See also* 2 W. RINGEL, SEARCHES & SEIZURES, ARRESTS AND CONFESSIONS, § 27.3(a)(3) at 27–19 (2d ed. 1990) (hereinafter "Ringel").[7]

## IV.

We turn now to appellant's challenge to the manner in which the jury was instruct-

---

**6.** *Miley v. United States, supra,* upon which Reid principally relies, involved questioning a suspect about the registration of a pistol. The facts of *Miley* are clearly distinguishable from the circumstances of the present case due to the investigative nature of Officer Clearwater's inquiry about what happened in the ambiguous on-the-street confrontation involving Reid and four or five others as the officer approached the scene. *See Hairston v. United States,* 500 A.2d 994, 997 n. 6 (D.C.1985). In *Miley* the police were investigating a murder and the defendant matched the description of the suspect. Miley attempted to elude a police officer by hiding in a stairwell. When Miley was discovered and moved away from his crouched position, a pistol was found in the location where he had been hiding. Instead of immediately arresting him and giving him his *Miranda* warnings (as there was clearly probable cause to arrest at this point), the police officer questioned him extensively on such matters as whether the gun was registered. This court found that the nature of the questions went to the heart of the criminal offenses with which he was charged and convicted. Moreover, it was unlikely, given the factual scenario, that the suspect could have given an innocent explanation for the gun as it is illegal to have a gun on the street except in certain limited circumstances. *Miley, supra,* 477 A.2d at 723–24 n. 7. *Miley* is thus distinguishable from the instant case, as here the police officer questioned Reid about what was

happening and why he had the knife. Carrying such a knife in the District of Columbia is not *per se* illegal, and the officer's questions might have elicited an exculpatory response, *e.g.* one consistent with self-defense. *See Rhode Island v. Innis,* 446 U.S. 291, 301–02, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980). Only after the officer asked these questions did it become obvious to the officer that Reid was dangerous, prompting him to arrest Reid.

**7.** Ringel explains:

Courts have relied on the Supreme Court's statement in *Miranda* to hold that questioning of a suspect at or near the scene of a crime is not custodial unless a formal arrest occurs. Even when the officer testifies to his subjective intent not to let a suspect leave the scene, courts have found the interrogation not custodial, relying on the Supreme Court statement to support the view that officers may "freeze" the scene of a crime briefly without actually detaining persons within the meaning of "custody." Most often an on-the-scene interrogation occurs when an officer first arrives on the scene of a reported crime and asks the person present what happened. Admissions made in response to such questions are admissible, since the situation is not considered custodial.

Ringel at 27–19 (footnotes omitted). *See also Mcllwain v. United States,* 568 A.2d 470, 473 (D.C.1989).

ed. The trial judge gave the jury, over the objection of defense counsel, the standard instruction on possession of a dangerous weapon in accordance with Criminal Jury Instructions for the District of Columbia, No. 4.82 (3rd ed. 1978). To convict Reid of a violation of D.C.Code § 22–3214(b), the government was required to prove beyond a reasonable doubt that Reid possessed the knife with the specific intent to use it "unlawfully." Jury Instr. No. 4.82, *supra. See also United States v. Brooks, supra,* 330 A.2d at 246. The trial judge instructed the jury on the meaning of the term "unlawfully" in the language of the standard instructions as follows: " '[u]nlawfully' means contrary to law. So to intend to use a weapon unlawfully against another means to intend to use it against a person in a manner which is contrary to law." *Id.*

Reid asserts that the definition of "unlawfully" as given by the trial court was inadequate because it did not explain to the jury specifically what is considered an unlawful use of a weapon. Accordingly, Reid argues, the instructions failed to provide the jury with adequate guidance on an essential element of the offense, the element of specific intent, and therefore his conviction should be reversed. The government agreed at oral argument before us that to be found guilty of a violation of D.C.Code § 22–3214(b), the appellant must be shown

to have intended to do something with a knife that violated some law. Unfortunately, however, the jury was not instructed on which law or laws Reid specifically intended to violate.[8]

Although the particular issue facing this court has not been squarely decided in the District of Columbia, this court has noted that "a weapon may be used unlawfully in more than one way." *McGee v. United States,* 533 A.2d 1268, 1271 (D.C.1987). In the context of deciding a case in which the evidence was insufficient to establish an attempted-battery assault, but sufficient to establish an intent-to-frighten assault, the court noted that the judge had instructed the jury only on the former, and concluded that the jury "would not know that merely intending to frighten another person with a weapon is also an unlawful use of that weapon." *Id.* Therefore the court in *McGee* reversed the assault conviction. A similar problem exists in the instant case because the jury here was not given examples or otherwise instructed on what uses of a knife constitute unlawful assaultive behavior.

Because there is no case law in this jurisdiction that bears directly on the instructional issue before us, both Reid and the government cite to federal cases and state cases from other jurisdictions.[9] Hav-

---

8. At one point, the prosecutor argued at trial that Reid was threatening the group at knifepoint when Officer Clearwater approached the group. The jury was not instructed as to whether such a threat, if it could be inferred from Officer Clearwater's testimony, was an unlawful use of the knife against another.

The jury was instructed that Reid's theory of the case was that he was playing with the knife rather than intending to use it unlawfully. The clear implication was that playing with a knife was a lawful rather than unlawful use.

9. Analogous federal cases turn most frequently on particular circumstances not present here.

In *United States v. Prieto–Tejas,* 779 F.2d 1098 (5th Cir.1986), upon which Reid principally relies, the court held that the trial court's failure properly to define "unlawfully" constituted plain error. *Id.* at 1105. The court added that "[i]nstructions that do not permit the jury to determine one of the elements of a crime are clearly in error." *Id.* The court distinguished the Fifth Circuit opinion in *United States v. Nanez,* 694 F.2d 405 (5th Cir.1982), *cert. denied,*

461 U.S. 909, 103 S.Ct. 1884, 76 L.Ed.2d 813 (1983), discussed below, on the ground that Prieto–Tejas had "established conclusively that the traveler's exemption allowed him to lawfully carry the handgun." *Prieto–Tejas, supra,* at 1105.

In *Nanez, supra,* the court held that "the trial court was obligated to guide the jury's analysis by way of defining [unlawfully carrying a firearm]." *Id.* at 411 (federal statute is 18 U.S.C. § 924(c)(2)). Because the defendant failed to object at trial, however, the trial court reviewed for plain error. *Id.* Because the statute required that the defendant prove that a particular exception (the traveler's exception) applied to him and he failed to do so, the court found no plain error. *Id.*

In *United States v. Rojas,* 502 F.2d 1042, 1045 (5th Cir.1974), on which the government principally relies, the court held that the trial court's error in failing to instruct the jury that possession of a firearm must be unlawful was not plain error because the jury, which had the indictment, statute, and elements of the crime

ing examined the available authority and having considered the nature of the offense charged, we find ourselves persuaded by Reid's argument that the trial court's jury instructions on specific intent and unlawfulness were inadequate under the circumstances of this case. Our review of the jury instructions given by the trial court convinces us that the jury was left to speculate on what was to be considered an unlawful use of a knife against another. *See* Criminal Jury Instructions for the District of Columbia, No. 4.82 (3rd ed. 1978).

We conclude that the trial court erred in not giving the jury more specific guidance on the specific intent element of the offense of possession of a prohibited weapon with the intent to use it unlawfully against another. *See United States v. Prieto–Tejas, supra,* 779 F.2d at 1105. *Cf. United States v. Rojas, supra.* We agree with the courts of New Jersey as expressed in the opinion of the Superior Court of New Jersey, Appellate Division, in *State v. Jenkins,* 234 N.J.Super. 311, 560 A.2d 1240 (App. Div.1989), in which the court made it clear that in such a prosecution the court cannot permit the jury to convict on the basis of speculation as to what possible purposes qualify as unlawful. *Jenkins* held that "a jury instruction on a charge of [weapon] possession for an unlawful purpose must include an identification of such unlawful purposes as may be suggested by the evidence and an instruction that the jury may not convict based on their own notion of the unlawfulness of some other undescribed purpose." *Id.* at 1242.[10] Where

appropriate, the jury should be instructed that using a weapon in self-defense would not be unlawful. *McBride v. United States,* 441 A.2d 644, (D.C.1982). *See also State v. Harmon,* 104 N.J. 189, 205–07, 516 A.2d 1047, 1056 (1986); *State v. Martinez,* 229 N.J.Super. 593, 605–07, 552 A.2d 232, 239–40 (App.Div.1989). It is our conclusion that the jury was not given instructions sufficient to enable it to know just what was an unlawful use in the context of this case.

In so deciding, we are not unmindful that the instruction in question has long been in common use in this jurisdiction. *See* Standardized Criminal Jury Instructions for the District of Columbia, § 4.82 (3d ed. 1978). *See also* E. Devitt & C. Blackmar, 1 Federal Jury Practice and Instructions, § 16.09 at 517 and accompanying notes (3d ed. 1977). Nonetheless, in circumstances such as those before us where a person is charged solely with PPW (b) and the circumstances are ambiguous as to the particular unlawful use allegedly intended by a defendant, more explicit instructions are required in order to avoid jury speculation. The error in this case was compounded by the prosecutor when she inaccurately stated during her closing argument that to possess a knife for one's own protection is illegal.

In sum, we hold that under the circumstances presented in this case, the trial court was required to give an instruction further defining the term "unlawful" in keeping with the government's theory of

---

read to it, was "made aware of the element of unlawfulness at least three times in the course of the court's instruction." *Id.*

In *United States v. Hoog,* 504 F.2d 45 (8th Cir.1974), *cert. denied,* 420 U.S. 961, 95 S.Ct. 1349, 43 L.Ed.2d 437 (1975), the appellant argued that the trial court failed to define "unlawful." *Id.* at 51. The reviewing court described the trial court's definition of " 'unlawful' as 'contrary to law' " as "circular, and no definition at all." *Id.* This definition is the same as the definition given by the trial court in the instant case. In reviewing for plain error, the court viewed the instructions as a whole, and held that there was no miscarriage of justice because the trial court had adequately defined the terms "decoy" and "inveigle." *Id.*

**10.** *Jenkins* also stated:

In most cases, a charge of possession with unlawful purpose is coupled with a charge of an act accomplished with the gun—a robbery, an assault, a homicide—which the court tells the jury is unlawful. Conviction of such an unlawful act supplies the factual basis for an inference of unlawful purpose in possessing the gun. But, if the possession charge stands alone, or if acquittal of the accompanying charge erases the identification of the unlawful purpose, the court may not permit the jury to convict on the basis of speculation as to what possible purposes qualify as unlawful. 560 A.2d at 1241. Even though *Jenkins* involved a gun whereas the instant case involves a knife, we find its reasoning persuasive and applicable here.

the case and the evidence of record. Here, further instruction on simple assault of the intent-to-frighten variety was in order. Although an instruction explaining the term "unlawful" will not be a universal requirement in PPW (b) cases, it ordinarily will be required when a PPW (b) charge stands alone.

## V.

We turn last to Reid's contention that he was improperly denied a self-defense jury instruction. Although Reid did not defend on the basis of self-defense, he based his request for a self-defense jury instruction on the testimony of Officer Clearwater regarding the circumstances the officer encountered when he came upon Reid holding a knife in his hand while facing four or five others. Because it is inferable that Reid alone was defending himself against several others, the evidence was sufficient, argues Reid, to raise the issue of self-defense.

▆▆▆ " 'As a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor.' " *Adams v. United States,* 558 A.2d 348, 349 (D.C. 1989) (quoting *Mathews v. United States,* 485 U.S. 58, 63, 108 S.Ct. 883, 887, 99 L.Ed.2d 54 (1988)). A self-defense jury instruction is to be given only if there is an evidentiary basis in the record to support it. *See Josey v. United States,* 77 U.S.App. D.C. 321, 322, 135 F.2d 809, 810 (1943). A defendant may put on different or even contradictory defenses without jeopardizing the availability of a self-defense jury instruction as long as self-defense is reasonably raised by the evidence. *See Mathews v. United States, supra,* 485 U.S. at 66, 108 S.Ct. at 888; *cf. Gray v. United States,* 549 A.2d 347, 349 n. 2 (D.C.1988) ("a defendant is entitled upon request to an instruction on any issue fairly raised by the evidence, regardless of whether it is consistent with the defense theory of the case or the defendant's testimony."). Although it is most frequently the testimony of a defendant that will provide evidence of de-

fendant's reasonable fear of imminent serious bodily injury, it is possible to put a self-defense claim before the jury without a defendant's testimony. *See Stevenson v. United States,* 162 U.S. 313, 323, 16 S.Ct. 839, 842–43, 40 L.Ed. 980 (1896), *quoted in Mathews, supra,* 485 U.S. at 63–64, 108 S.Ct. at 886–88; *United States v. Bush,* 135 U.S.App.D.C. 67, 70, 416 F.2d 823, 826 (1969) (where defendant's self-defense claim is evident from government's evidence, MJOA should have been granted). In this case, even though Reid defended on the basis that he and others were merely playing with knives at the time Officer Clearwater approached the group, he was not precluded from also having the issue of self-defense put to the jury if there was sufficient evidence to support his claim.

"In determining whether a defense instruction was properly denied, we review the evidence in the light most favorable to the defendant." *Adams, supra,* 558 A.2d at 349. When the evidence presented at trial is viewed most favorably to Reid, the circumstance of Reid's engaging in an argument with several others while holding a knife could have indicated that Reid was outnumbered and was in the process of warding off an attack by the group. When Officer Clearwater approached the group, he did not immediately arrest Reid but instead asked questions to investigate the ambiguous street scene. Reid's statement to Officer Clearwater in response to the Officer's question about what he was doing with the knife and what was happening, viewed most favorably to Reid, could be construed to mean that he was prepared to defend himself with the knife if the others attacked him. In addition, Watts testified that the reason he himself carried a knife was so that he could protect himself in case of trouble. The radio run indicating that two men and a woman were fighting with knives could also provide circumstantial evidence that self-defense could have been involved in the altercation. It appears from this review of the record that there was some basis in the evidence presented by the government that supported Reid's claim to a self-defense instruction. *See Potter v. United States,* 534 A.2d 943, 946

(D.C.1987) (the defense of self-defense may be raised in a PPW (b) case); *McBride v. United States, supra,* 441 A.2d at 649 n. 9 (if defendant possessed weapon only for defensive purpose, she would not be guilty of PPW (b)).[11] On remand, the trial court should carefully examine the evidence in the case, as retried, in the light most favorable to the defendant to determine whether Reid is entitled to a self-defense instruction.

*Reversed and Remanded.*

**11.** Exacerbating the failure of the trial court to instruct on self-defense was the prosecutor's improper closing argument implying that use of a knife in self-defense was illegal. The government inappropriately seized upon Watts' testimony of possession of a knife for defensive purposes to argue that such possession was for an unlawful purpose. The jury may thus have been left with the incorrect impression that it is illegal to possess a knife in the District of Columbia, even for self-defense. *See Peay v. United States,* 575 A.2d 279, 283 (D.C.1990) (petition for hearing/rehearing en banc pending) ("carrying of a knife for a legitimate purpose is not prohibited by the statute.").