**Rory C. WILSON, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 95–CM–659.**

District of Columbia Court of Appeals.

Submitted Feb. 20, 1996.

Decided April 11, 1996.

---

Tamara A. Shockley, appointed by this court, Washington, DC, was on the brief for appellant.

Eric H. Holder, Jr., United States Attorney, and John R. Fisher, Thomas J. Tourish, Jr., Stephen Best, and Gary Collins, Assistant United States Attorneys, were on the brief for appellee.

Before WAGNER, Chief Judge, and STEADMAN and SCHWELB, Associate Judges.

SCHWELB, Associate Judge:

Rory C. Wilson was convicted by a jury of assaulting Clyde A. Collins, an officer of the Metropolitan Transit Authority (MTA),[1] in violation of D.C.Code § 22–504 (1989) (simple assault). His principal contention on appeal is that the trial judge erroneously declined to instruct the jury with respect to Wilson's right of self-defense. We agree and reverse.

## I.

This case arises out of an altercation involving Wilson and MTA officers Collins and Panik. The incident occurred while all three men were riding a Metro bus, and escalated after Collins pulled Wilson off the bus. Collins, Panik and Wilson were the only witnesses at the trial.

The evidence adduced at trial showed that while Wilson was on the bus, he began to flirt with[2] or harass[3] an older woman passenger. Officer Collins testified that Wilson shouted at the woman and that he repeatedly used profanity, and it is undisputed that the passenger (as well as a younger woman and child who were travelling with her) moved to another seat.[4] Collins testified that he asked Wilson to "tone it down," but that Wilson responded to this and similar requests with a barrage of obscenities.

Wilson eventually pulled the bell cord, thus ostensibly signalling to the driver Wilson's intention to alight from the bus. The driver opened the rear door, but Wilson did not get off. Instead, according to Collins, Wilson continued to attempt, somewhat inartfully,[5] to make romantic contact with the woman passenger. While he was "flirting" in this manner, Wilson continued to hold the door open, and the bus therefore could not leave.

Collins testified that at this point, he politely asked Wilson to "go ahead and get off the bus;" Wilson's response was "fuck you." Collins identified himself as an officer and displayed his badge, but Wilson continued to curse. Collins testified that at this point

> I pushed past him off the bus. He was still holding on to the bus doors. His left arm dropped away from one of the doors. And when I pulled him away from the other door, he started swinging at me.

At the time of this swinging, according to Officer Collins, Wilson had a glass soda bottle in his hand and "probably" struck Collins with it once before the bottle fell to the ground. Collins testified that he eventually forced Wilson to the ground and, with the

---

1. Wilson was found not guilty of assaulting a second officer, Mark A. Panik, by spitting at him. Wilson was also acquitted of unlawful possession of a prohibited weapon (a bottle) in violation of D.C.Code § 22–3214(b) (1989).

2. This is Wilson's version.

3. This is the prosecution's version.

4. Collins testified that the passenger with whom Wilson was attempting to make a connection asked rhetorically: "Oh lord, where's the police when you need them?" Collins responded "right here" and identified himself as an officer.

5. Collins quoted Wilson as saying: "I really think we should get together and shit and maybe ... "

assistance of Officer Panik, succeeded in handcuffing him.[6]

Wilson testified in his own behalf. He acknowledged that he had been trying to flirt with a woman on the bus, but he emphatically denied using any profanity: "No, not when I'm flirting with a lady, no." He testified that he was unaware of Officer Collins' presence on the bus, that Collins said nothing to him, and that he said nothing to Collins. Wilson claimed that he held the bus door open, as he always did, "just in case somebody else is getting off." He continued as follows:

> Then I proceeded to just move off the bus, I was off the bus. And I got pushed. I turned around and ... the next thing I knew I didn't get a full turn and I was being tackled to the ground.

Wilson denied that he had done anything wrong, and he insisted that Collins pushed him off the bus "because I had a very pleasant conversation with the lady on the bus."

Wilson testified that Collins did not identify himself as an officer until Wilson was on the ground, and Collins' knee was pressing down between Wilson's shoulder blades. Wilson said he was "struggling to get [Collins] off of me." Wilson admitted that he had a bottle of grapefruit juice in his possession, but he denied swinging it or using it as a weapon: "No, I didn't, that was my dinner." Wilson stated that as a result of the altercation, he had difficulty breathing, that he was taken to D.C. General Hospital by ambulance after his release from custody, and that he received treatment there for his injuries.

## II.

At the conclusion of the prosecution case, Wilson's attorney made an oral motion for a judgment of acquittal (MJOA). He contended that the government had failed to prove

> that Mr. Wilson assaulted the police officer without provocation. I believe the testimony we have strongly indicated ... that any

action Mr. Wilson took outside the bus was in self-defense.

The judge denied the MJOA, and defense counsel indicated that "the only instruction I'm going to ask for is self-defense." The judge stated that he would give this instruction if the defense produced evidence to support it.

After the defense had presented its case, Wilson's attorney repeated his request for a self-defense instruction. The judge declined this request because

> I don't think there's any testimony, there's no opportunity, for self-defense. He denied brandishing the bottle. ... I don't think it's in this case.

Wilson contends on appeal that this ruling was erroneous.

## III.

It is essentially undisputed that there was a fight between Wilson and Officer Collins. Collins explicitly characterized the altercation as "a fight."[7] Wilson did not use that term, but he testified that he "struggled" with Collins "to get him off of me." There is no agreement, however, as to who assaulted whom.

According to Collins, Wilson was the aggressor; the fight began when Wilson started swinging a bottle at him after Collins had justifiably pulled Wilson off the bus. Wilson testified, on the other hand, that without any provocation whatever, Collins tackled him from behind and wrestled him down, and that he (Wilson) struggled with Collins only after Collins had him on the ground with the officer's knee between Wilson's shoulder blades.

Under these circumstances, Wilson was entitled to an instruction on self-defense. In *Guillard v. United States*, 596 A.2d 60 (D.C. 1991), a case quite similar to this one, we held that the defendant, who had denied assaulting or striking the complainant, was nevertheless entitled to a self-defense instruction. We noted that, in general, "a de-

---

**6.** Officer Panik had been sitting in a part of the bus where he could not hear the exchanges between Collins and Wilson before the bus came to a stop. Panik essentially corroborated Collins' account of those events which occurred after Collins attempted to remove Wilson from the vehicle. Panik also testified that Wilson spat at him at the police station.

**7.** He testified that "the fight" moved towards Fourteenth Street.

fendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Id.* at 62 (several citations omitted).[8] We reiterated that "[i]n determining whether a [proposed] defense instruction was properly denied, we review the evidence in the light most favorable to the defendant." *Id.* (quoting *Adams v. United States,* 558 A.2d 348, 349 (D.C.1989)). We explained that "an accused is entitled to a self-defense instruction if the evidence, either that of the defense *or prosecution,* fairly raises the issue." *Id.* at 63 (quoting *Harling v. United States,* 387 A.2d 1101, 1103 n. 1 (D.C.1978)) (emphasis added in *Guillard*). Finally, we concluded that "[a] defendant's decision ... to establish different or even contradictory defenses does not jeopardize the availability of a self-defense jury instruction as long as self-defense is reasonably raised by the evidence." *Id.* at 62 (quoting *Reid v. United States,* 581 A.2d 359, 367 (D.C.1990)) (internal quotation marks omitted). Based on these principles and the authorities cited, we held that the trial judge had erred in failing to instruct the jury with respect to self-defense, because an impartial juror could reasonably have credited prosecution testimony that Guillard struck the complainant, while at the same time believing defense testimony that the complainant was the aggressor. *Id.* at 63–64.

The government contends that a self-defense instruction would have been inappropriate because Wilson professed his innocence and, in particular, because he denied that he ever used the bottle as a weapon against Officer Collins. Wilson did testify, however, that he struggled with Collins after Collins attacked him. Moreover, even aside from Wilson's reference to a struggle, the record, when viewed in the light most favor-able to the defense, provides at least some support for a finding that Wilson swung or struck at Collins (as Collins testified), but that he only did so after Collins, who was the aggressor and who acted without provocation, violently pulled Wilson off the bus and forced him to the ground.

According to the government, any inference that Wilson acted in self-defense would require the jury "to engage in bizarre reconstruction of the evidence." *See Guillard, supra,* 596 A.2d at 63 (citation omitted). We do not agree. Adapting the language of *Guillard* to the present record, we conclude that

> [w]ith respect to the events of the assault, the jury reasonably could credit the testimony of the government's [witnesses] ... to find that [Wilson] did assault [Collins]. Second, the jury reasonably could credit [Wilson] ... with respect to the events that immediately preceded the alleged assault, *i.e.* that [Collins pulled Wilson off the bus and threw him to the ground], to find that [Collins], not [Wilson], was the initial aggressor. These facts alone are enough to demonstrate that this is not the kind of case that would require the jury to undertake a "bizarre reconstruction" of the evidence to acquit [Wilson] of simple assault on the basis of self-defense.

*Id.* (citations omitted).

It is not unreasonable for a jury to credit some, but not all, of the testimony of a witness. *See id.* at 64. An impartial juror could reasonably find that Collins attacked Wilson and that Wilson defended himself (with the bottle or otherwise). There was evidence to support the requested instruction, and we conclude that the judge erred in refusing to charge the jury with respect to self-defense.[9]

---

8. The quoted language was originally used in *Mathews v. United States,* 485 U.S. 58, 63, 108 S.Ct. 883, 886, 99 L.Ed.2d 54 (1988).

9. The government contends that the trial judge's refusal to instruct on self-defense is supported by *Hale v. United States,* 361 A.2d 212 (D.C.1976) and *Holt v. United States,* 340 A.2d 827 (D.C. 1975) (per curiam). According to the government, *Hale* stands for the proposition that a defendant is not entitled to a self-defense instruc-tion where he did not admit that he assaulted or struck the victim. We rejected that reading of *Hale* in *Guillard,* 596 A.2d at 62 n. 1, and do so again today.

In *Holt,* police officers testified that the defendant, *inter alia,* advanced on them with a knife. The defendant denied attacking or threatening the officers at all. The trial judge found that "nowhere in the testimony is there any evidence supporting a theory that this defendant used a knife *to defend herself against some excessive*

## IV.

 For the foregoing reasons, the judgment is reversed[10] and the case is remanded for a new trial.[11]

*So ordered.*

force being used by the officers." 340 A.2d at 828. This court agreed because "there was insufficient evidence offered by appellant relating to self-defense to allow the instruction to be given." *Id.* The court apparently did not address the question whether the defense and prosecution testimony, when considered together in the light most favorable to Ms. Holt, would have supported the requested instruction. In any event, the present case differs from *Holt* in that both parties testified that a fight or struggle took place but disagreed as to who was the aggressor.

cluded that refusal to charge the jury on self-defense, if error, would have been harmless. In *Cowan*, a self-defense instruction would have compromised Cowan's basic theory that he was not at the scene of the crime at all. Here, Wilson denied that he assaulted Collins, but admitted that he was present during the altercation and that he struggled with the officer. Any inconsistency between his general denial of assaultive conduct and his claim that he acted in self-defense is far less pronounced than the striking contrast between the two defenses in *Cowan*.

10. We do not agree with the government that any error was harmless. *See, e.g., Jones v. United States*, 555 A.2d 1024, 1028 (D.C.1989); *Gray v. United States*, 549 A.2d 347, 351 (D.C.1988). This case is not like *Cowan v. United States*, 629 A.2d 496, 503–04 (D.C.1993), in which we con-

11. In light of our oft-repeated standard for claims of evidentiary insufficiency, *see, e.g., Parks v. United States*, 627 A.2d 1, 4 (D.C.1993), we reject Wilson's contention that the trial judge erred in denying his MJOA. Accordingly, there is no bar to a new trial.