John McCLAM, Appellant,

v.

UNITED STATES, Appellee.

No. 99–CF–1423.

District of Columbia Court of Appeals.

Argued March 6, 2001.
Decided June 21, 2001.

---

Judith A. Lovelace, for appellant.

Thomas S. Rees, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney at the time the brief was filed, and John R. Fisher, Thomas J. Tourish, Jr. and Margaret Carroll, Assistant United States Attorneys, were on the brief for appellee.

Before STEADMAN, RUIZ and WASHINGTON, Associate Judges.

RUIZ, Associate Judge:

John McClam appeals his convictions of first-degree burglary, *see* D.C.Code § 22–1801(a) (1996 Repl.), kidnapping while armed, *see* D.C.Code §§ 22–2101 (kidnapping), –3202 (committing a crime while armed), armed robbery, *see* D.C.Code §§ 22–2901(robbery), –3202 (committing a crime while armed), and assault, *see* D.C.Code § 22–501. The trial court ruled that because appellant denied committing any crimes, he could not avail himself of the defense of duress. Appellant raises numerous issues on appeal,[1] most significantly that the trial court erroneously denied him jury instructions and argument on his theory of duress. We hold that the

---

1. Appellant also claims that 1) the trial court erred in not admitting a statement by a co-participant; 2) the jury convicted him of crimes for which he had not been indicted; 3) the trial court erred in denying him instructions on assault as a lesser-included offense of armed robbery and kidnaping while armed; 4) his assault conviction merges with the convictions for kidnaping while armed and armed robbery; 5) his kidnapping while armed conviction merges with armed robbery; and 6) his burglary and armed robbery convictions merge. In light of our disposition, we need not reach these issues.

trial court abused its discretion in refusing to allow appellant to present a duress defense and denying appellant the duress instruction. We thus reverse and remand for a new trial.

## FACTUAL SUMMARY

### Trial

Kenneth White testified that appellant called him on April 20, 1997, and told him that he was coming over to return money White had loaned him. White knew appellant, whom he called "Tony," from previous sexual encounters. Appellant arrived at White's home with a third person, later identified as his cousin, Nathaniel Grooms or "Bey Bey," and suggested that the three of them have sex. White declined, but offered drinks to the two men. White testified that appellant then asked him to step into the bedroom to talk and suddenly pulled out a gun, declaring, "[t]his is a robbery. Get on the floor." White attempted to protest, but Bey Bey walked in with a gun and hit him on the head, knocking him down. When White tried to get up, Bey Bey hit him again.

White testified that he handed appellant his money clip with two dollars, his driver's license, a maxed-out credit card and an ATM card before Bey Bey hit him on the head. He was then put on the bed and appellant began to tie his arms and legs while Bey Bey wrapped his head with duct tape. He stated that Bey Bey was instructing appellant to "[t]ie his hands, tie his arms. Tie them tighter. Tie his legs," and appellant complied. Appellant then told White to give him the number so he could use the ATM card and said he was going to an ATM machine and would return. Bey Bey told White in appellant's presence that appellant was going to the ATM machine, and that if White had given him the wrong number, Bey Bey "was going to put [White] to sleep." Bey Bey then guided White to the bathroom, threw him into the bathtub, and turned the water on. White was able to turn the water off and stand, but Bey Bey returned and hit him again. After Bey Bey left, White eventually escaped by loosening the ropes with the water and climbing out the bathroom window.

Appellant did not deny that he was in White's apartment, but claimed that the robbery was Bey Bey's idea and that he was shocked and frightened when Bey Bey pulled out the gun and struck White. Appellant denied having a gun and stated that when he protested Bey Bey's actions, "[Bey Bey] told [appellant] to shut up and pointed the gun at [him]." During pretrial proceedings appellant testified that he had not participated in the robbery, but only watched while Bey Bey hit White and robbed him.[2] During trial, appellant testified that although Bey Bey tried to make him tie up White, appellant only "pretended like I was tying" and "I really didn't tie it, tie no knot in it." Appellant also stated that he put a pillow under White's head in the bath tub and tried to help him. He stated that he was in fear for his life because Bey Bey "looked like he just went crazy." When Bey Bey eventually dropped appellant at home after the robbery in White's house, appellant testified that he was in shock and he told his sister what happened. Appellant's sister testified that appellant told her that Bey Bey had pointed a gun at him and she knew Bey Bey to be "cold and callous, inhuman, evil, wicked ... [and] criminal minded."

2. The following colloquy took place:
  The Court: Well, ... I thought his position, sir, was that you didn't do anything, you didn't rile him, you didn't tie him up, you didn't put tape on him.

  Appellant: I didn't do nothing. Bey Bey taped him up ... He told me to shut up, and so I kind of like took a couple of steps back and just watched him, you know.

Four days after the event, appellant was called into police headquarters; he cooperated with the police and told them where Bey Bey had stashed the stolen items.[3]

*Pre-trial*

On September 29, 1997, the government filed a motion to exclude Defendant's claim of duress, seeking to preclude the assertion of the duress defense unless appellant made a factual proffer to allow the government to prepare a rebuttal. The government argued, based on *United States v. Jenrette*, 240 U.S.App.D.C. 193, 196, 744 F.2d 817, 819 (1984), that "if there was any reasonable, legal alternative to committing the crime, the defense of duress will not obtain." Appellant opposed this motion, asserting that appellant "knew [Bey Bey] to be a violent and dangerous person," and offered the standard duress jury instruction in his list of proposed instructions. The court concluded that a sworn, pre-trial proffer would be necessary.

Appellant testified pretrial that during the incident at White's home, he was in fear of Bey Bey because he pointed a gun at the appellant and was acting "like he [ ] kind of lost his mind." He also stated that he tried to stop Bey Bey from hurting White, but Bey Bey told him to shut up. Appellant testified that he "didn't do nothing," and that his only mistake was inviting Bey Bey over to White's house.

After receiving testimony from appellant and argument from counsel, the trial court ruled that duress was not a permissible defense because appellant denied doing anything during the incident. The trial court stated that, "[d]uress is like entrapment. It's a defense. It says I committed a criminal act because somebody held a

gun to my head. [Appellant] is denying any involvement in the criminal act other than being there. He's saying that I was a mere presence. I did nothing.... His defense is [a] complete denial." Defense counsel tried to argue that appellant was putting forth different defenses, stating, "[t]he duress is a secondary defense saying, to the extent I did participate, it's duress .... whatever minor things I might have done, or whatever affirmative action I didn't take, was duress, and it's a secondary defense." The trial court, however, responded that without an admission of guilt, appellant could not invoke the duress defense, ruling, "I have to have an admission of guilt to invoke a[ ] [defense], so there is at this moment absolutely no basis for a duress argument or instruction."

## ANALYSIS

Appellant argues that in demanding an admission of guilt before allowing the defense of duress to be presented to the jury, the trial court applied an incorrect legal standard. Specifically, appellant contends that because we permit the use of inconsistent defenses, he should have been allowed to put forth a duress defense even though he did not admit to committing a crime. The government, on the other hand, concurs with the trial court's decision, adding that appellant was not entitled to a duress instruction because he did not attempt to escape or notify law enforcement officials during the commission of the crime. We hold that the trial court erred in refusing to allow the duress defense and to give the duress instruction.

■■■ "As a general proposition a defendant is entitled to an instruction as to any recognized defense for which there

---

**3.** Appellant testified that he had spoken with Detective Nathaniel Saunders about the incident and told Saunders that Bey Bey had pointed a gun at him. Detective Saunders testified he had spoken with that appellant, but that the appellant did not say that Bey Bey had pointed a gun at him.

exists evidence sufficient for a reasonable jury to find in his favor," *Simpson v. United States*, 632 A.2d 374, 376 (D.C.1993) (quoting *Bostick v. United States*, 605 A.2d 916, 917 (D.C.1992)), keeping in mind that "trial judges properly deny instructions which require the jury to engage in 'bizarre reconstructions of the evidence.'" *Adams v. United States.*, 558 A.2d 348, 349 (D.C.1989) (quoting *Wood v. United States*, 472 A.2d 408, 410 (D.C.1984)). Once the defendant requests an instruction, it is not necessary that the evidentiary basis for the instruction stem from the defendant's evidence; it may also be derived from the government's evidence. *See Wilson v. United States*, 673 A.2d 670, 673 (D.C. 1996) ("[A]n accused is entitled to a self-defense instruction if the evidence, *either that of the defense or prosecution*, fairly raises the issue") (emphasis added) (quoting *Guillard v. United States*, 596 A.2d 60, 63 (D.C.1991)); *Reid v. United States*, 581 A.2d 359, 367 (D.C.1990) (holding that the testimony of the defendant is not necessary to put a claim before the jury).

▆▆▆ In addition, this court has consistently held that a defendant may put on different or even contradictory defenses. *See, e.g., Adams*, 558 A.2d at 350 (holding that the trial court erred in denying a self-defense instruction when the defendant denied that weapons were even used because "mere inconsistency between defenses does not constitute a proper basis for the denial of a defense instruction"); *Reid*, 581 A.2d at 367 (holding that a defendant may put on contradictory defenses without jeopardizing the availability of a self-defense instruction); *Gray v. United States*, 549 A.2d 347, 349 n. 2 (D.C.1988) ("[A] defendant is entitled upon request to an instruction on any issue fairly raised by the evidence, regardless of whether it is consistent with the defense theory of the

case or the defendant's testimony."). In *Guillard*, a case similar to this one, we held that the trial court erred in denying the self-defense instruction because the defendant denied committing the crime, reasoning that "the jury reasonably could credit the testimony of the government's [witnesses] . . . to find that [the defendant] did assault [the complainant]." 596 A.2d at 63. Thus, a defendant does not have to admit guilt in order to present a defense of duress, as long as the evidence reasonably supports that defense. *See id.; Wilson*, 673 A.2d at 673.

▆▆▆ The proper inquiry, therefore, is whether there is "evidence, either that of the defense or the prosecution, [that] fairly raises the issue." *Guillard*, 596 A.2d at 63 (quoting *Harling v. United States*, 387 A.2d 1101, 1103 n. 1 (D.C.1978)). A duress instruction is appropriate if the evidence is sufficient for a reasonable jury to find that the defendant participated in the offense as the result of a reasonable belief that he would suffer immediate serious bodily injury or death if he did not participate in the crime. *See United States v. Bailey*, 444 U.S. 394, 409, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980) (holding that a defendant claiming duress must show that there was no opportunity to refuse the criminal act and avoid the threatened harm); *Jenrette*, 240 U.S.App.D.C. at 196, 744 F.2d at 820–21 (same); *Stewart v. United States*, 370 A.2d 1374, 1376 (D.C.1977) (holding that duress is available in the presence of a well grounded apprehension of immediate death or serious bodily injury). The defendant should have no reasonable, legal alternative to avoiding the harm. *See Bailey*, 444 U.S. at 409, 100 S.Ct. 624. It is uncontested that the government's witness, White, would testify that appellant participated in the crime.[4] *Cf. Guillard*, 596 A.2d at 63. ("It was necessary to

---

4. The trial court engaged in a pretrial collo-

quy with the government that established that

consider also the testimony of the government witnesses to determine whether there was any evidence that fairly raised the issue ...").  Appellant testified at trial that to the extent he participated, it was because he was instructed to do so at gunpoint by Bey Bey. If appellant's testimony was believed by the jury, it could find that appellant acted under Bey Bey's compulsion.

The government argues, based on *Jenrette*, 240 U.S.App. D.C. at 197, 744 F.2d at 821, that appellant was unable to avail himself of the duress defense because he did not offer an explanation for his failure to take alternative action, such as notifying law enforcement officials after the commission of the crime.  We note that in *Jenrette*, the court concluded that Jenrette did not prove "imminent danger" because of many factors, including a failure to notify law enforcement officials during the two days that lapsed while the crime was being committed.  *See id.*  During oral argument, the government conceded that the defense of duress does not require the defendant to notify the authorities after the crime is completed.  Moreover, the government acknowledged during argument that the correct standard is whether *during the commission of the crime* the defendant had a reasonable opportunity to escape.  *See id.*  This is not to say, however, that a jury could not infer a lack of duress from the purportedly unwilling participant's failure to contact police once he was able to do so.  But that is a jury question.  If appellant's testimony in this

case is credited by the jury, it could find that there was no time to call law enforcement officials, nor an opportunity to escape, if Bey Bey was pointing a gun at him while appellant was in White's home.  Although appellant later left the house to go to an ATM machine, and presumably could have escaped or notified the police during that time, he was charged only for the events that took place in White's home.

We note also that there was sufficient evidence that appellant had a reasonable belief of serious bodily injury or death.  *Cf. id.*  Upon being asked if he was afraid of Bey Bey, appellant replied, "[w]ho wouldn't be afraid ... he's shot at people, shot people, shot himself ... he's done a lot of vicious things and then he had the gun pointed at me...."  From this testimony the jury could have found that McClam feared serious bodily injury and had no reasonable alternative but to assist Bey Bey. *Cf. Guillard,* 596 A.2d at 63 (discussing the evidentiary basis for a self-defense instruction).  Moreover, we do not believe that the jury would have needed to engage in "bizarre reconstructions of the evidence" to consider the issue of duress.  *Adams,* 558 A.2d at 349 (quoting *Wood,* 472 A.2d at 410).  Therefore, we hold that the trial court erred in refusing to allow appellant to present a duress defense and denying the duress instruction.[5]

*Reversed and Remanded.*

the prosecution was claiming that appellant not only failed to stop Bey Bey, but affirmatively committed the crime.

5.  The government contends that appellant did not preserve his request for the duress instruction and urges us to review for plain error because appellant's pre-trial testimony did not meet the threshold of what is required for a duress defense and "appellant ... never renewed his request for a duress instruction

[during trial] after ... new testimony was received."  We disagree.  Rule 30 provides in part:

At the close of the evidence or at such earlier time during the trial as the Court reasonably directs, any party may file written requests that the Court instruct the jury on the law as set forth in the requests....  No party may assign as error any portion of the charge or omission therefrom unless

that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection.
Super. Ct.Crim. R. 30.
Appellant's counsel requested a duress instruction pretrial, which the trial court denied because appellant did not admit to committing the crime, but did not subsequently renew his request, after appellant admitted at trial that he had done more than stand by when Bey Bey ordered him at gunpoint. On this record, we conclude that the trial court's erroneous pretrial ruling would not have been

revisited and corrected by a subsequent defense request. While appellant said he did nothing to assist Bey Bey during pretrial proceedings, during trial he merely stated that he "pretended" to be tying the rope, "not making a knot in it." Thus appellant did not change his story substantively during trial to admitting his participation. We need not address whether, if appellant had clearly changed his story, trial counsel would have an obligation to point out to the trial court that the basis for its (albeit erroneous) ruling had become moot because of new testimony admitting to participation in the crime.