**James COWAN, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 90–CF–327.**

District of Columbia Court of Appeals.

Argued Nov. 16, 1992.
Decided July 29, 1993.

Richard S. Greenlee, Public Defender Service, with whom James Klein, Public Defender Service, was on the brief, for appellant.

Mary–Patrice Brown, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty. at the time the brief was filed, and John R. Fisher, Asst. U.S. Atty., were on the brief, for appellee.

Before ROGERS, Chief Judge, and SCHWELB and SULLIVAN, Associate Judges.

SCHWELB, Associate Judge:

Cowan was convicted by a jury of felony murder while armed, D.C.Code §§ 22–2401, –3202 (1989), second degree murder, id.,[1] § 22–2403, carrying a pistol without a license (CPWOL), id. § 22–3204, and attempted distribution of cocaine, id., § 33–541(a)(1) (1988). He seeks reversal of all of these convictions, primarily on the ground that the trial judge refused to instruct the

jury on self-defense and defense of a third person. Cowan never requested an instruction as to that defense with respect to second-degree murder, CPWOL, or attempted distribution; indeed, on this record, such an instruction has no conceivable application to the latter two offenses. Cowan did request the judge to instruct the jury on self-defense and defense of another with respect to felony murder, but sought these instructions only if the judge also instructed on aiding and abetting, as requested by the prosecution. The judge never gave an aiding and abetting instruction, and the condition under which Cowan had requested the instructions on self-defense and defense of a third person never materialized. We conclude that the judge's refusal to instruct on these defenses was not "plain error," and that even if the issue had been preserved, any error would have been harmless.

We note, *sua sponte*, that "[w]hen there is only one killing, the defendant may not be convicted of more than one murder." *Thacker v. United States*, 599 A.2d 52, 63 (D.C.1991). Accordingly, we must remand the case for resentencing, with directions that the trial court vacate one of Cowan's two murder convictions. In all other respects, we affirm.

## I.

### THE FACTS

In the early morning hours of November 20, 1986, in this city's macabre drug underworld, one young life was snuffed out, and two others were effectively ruined. James ("Wop") Cowan was then eighteen years of age. Sammie Giles, Cowan's codefendant, who later entered a plea of guilty to second-degree murder and became the prosecution's lead witness, was only sixteen.

Giles' account of the relevant events at Cowan's trial was a testament to the cheapness of life in the milieu in which he and

---

1. The trial judge had granted a defense motion

for judgment of acquittal on the original charge

Cowan moved;[2] the banality of the episode underlines its unremitting horror. Two teen-agers walked out into the streets of the city with cocaine to sell and a loaded pistol to guard their drugs and money. Their victim, a prospective buyer, was apparently shot dead because he argued with Giles and placed his hand in his pocket. Realistically, we are told, he who draws last in such an encounter may not survive.

According to Giles, he and Cowan were at Giles' apartment, watching the movie "Scarface" and packaging crack cocaine for sale. They left the apartment to market the crack in the courtyard of the complex. Giles carried the drugs; Cowan, who was there to provide protection, was armed with a loaded .38 caliber revolver. The decedent, Anthony Knox, approached Giles and asked for cocaine. A dispute apparently arose over the price (or possibly the quality) of the drugs. Knox reached in his pocket and said "give me everything." Giles testified that Cowan told him to "duck, soldier," and then shot Knox.[3] According to Giles, the two youths fled; Cowan then stuck a revolver in Giles' mouth and threatened to shoot Giles if he reported what had occurred.

There was additional testimony to support the prosecution's theory that Cowan, and not Giles, shot Knox. Sixteen-year-old Tina Duvall, Giles' cousin and Cowan's former girlfriend, testified that the two young men had left the apartment together, with Cowan carrying a revolver. Upon their return following the shooting, according to Ms. Duvall, Cowan said that he "shot the guy because he was getting ready to stick up one of [my] soldiers." Lillian Holcomb testified that, although high on drugs, she had witnessed the shooting and that Cowan

of first degree premeditated murder.

had shot the decedent after "the guy" put his hand in his pocket.

The defense presented no evidence, but vigorously attacked the credibility of the prosecution witnesses and attempted to show, through their testimony, that it was Giles, and not Cowan, who shot Knox. Giles was impeached with alleged discrepancies between his trial testimony and the accounts which he had provided to the grand jury and to the judge who took his plea; he also acknowledged that he sometimes carried a handgun.[4] The murder weapon had been recovered under a mattress in Giles' apartment; according to Ms. Duvall, however, both Giles and Cowan stayed in the room where it was found.

Ms. Holcomb was impeached with her grand jury testimony that it was Giles who did the shooting and with other alleged inconsistencies in her accounts. Her credibility was also challenged on the basis of her drug use and her possible motivation to curry favor with the government in connection with pending drug charges. Ms. Duvall was also impeached with allegedly inconsistent prior statements; she, too, admitted that she used cocaine in November 1986 and that Sammie Giles sometimes supplied her with drugs.

At the conclusion of the prosecution's case, defense counsel moved for a judgment of acquittal (MJOA). The defense argued, with respect to the murder charges, that Cowan had acted in self-defense. The judge denied the motion as to all counts except first-degree murder. With respect to that charge, the judge ruled that the prosecution had not proved premeditation. He granted the MJOA, but referred the lesser-included offense of second-degree murder to the jury.

2. By the time of Cowan's trial, Giles had also entered a plea of guilty to a second murder, and he had a charge of armed rape pending against him in Maryland. A second murder charge against Cowan was severed from this one. The activities of Cowan and Giles during the autumn of 1986 are also described in *Belton v. United States,* 581 A.2d 1205 (D.C.1990).

3. When police discovered the decedent's body, his hand was still in his pocket. Also in that pocket was a hammer.

4. The defense contended that Giles received a favorable plea offer because he was not required to plead to any armed offense carrying a mandatory minimum penalty. Giles responded that he faced thirty years and that this was not a "sweet deal."

Prior to closing argument, the court and counsel had extensive discussions, which are described in detail in Part II of this opinion. With respect to the felony murder count, the judge agreed to instruct the jury, as requested by the government, on aiding and abetting, essentially on the theory that if Cowan participated in the attempted distribution, he could be convicted of felony murder even if it was Giles who shot Knox. The judge also agreed to the defense request that, if (but only if) an aiding and abetting instruction were given, the jury be instructed on self-defense and defense of a third person.

When counsel presented their closing argument, however, Cowan's attorney made no mention of self-defense or defense of a third person. Indeed, he focused entirely on the theory that Giles, not Cowan, was the shooter. After further discussion, the judge decided that he would not instruct the jury either with respect to aiding and abetting or with respect to self-defense or defense of a third person. Cowan was convicted on all four remaining counts. This appeal followed.

## II.

### THE DEFENSE REQUEST FOR INSTRUCTIONS ON SELF–DEFENSE AND DEFENSE OF A THIRD PARTY

#### A. Background

In order to determine whether Cowan has preserved for appeal the question whether the jury should have been instructed on self-defense or defense of a third person, it is necessary to set forth the context in which the issue arose and the respective strategies employed by counsel for both sides.

The prosecution's basic theory, as we have seen, was that Cowan shot Knox; Giles was viewed as an aider and abettor. Cowan's defense, on the other hand, was that Giles was the shooter, that Cowan was innocent, and that the prosecution had not proved that Cowan was even present on the scene. The government countered this defense with an alternative theory that, even if Giles was the person who shot Knox, Cowan was aiding and abetting Giles in the attempted distribution of cocaine, and was thus guilty of felony murder. Based on this alternative theory, which was applicable only to the felony murder count, the prosecutor requested the judge to instruct the jury with respect to the law of aiding and abetting.

Cowan's attorney objected, not without reason, that the prosecution's alternative theory had not been presented to the grand jury and could not now be invoked at trial. Counsel also requested that if, *but only if,* the judge instructed on aiding and abetting, that he also instruct the jury, with respect to the felony murder count, as to self-defense and defense of a third person. In the absence of an instruction on aiding and abetting, the defense wanted no instruction whatever on self-defense or defense of a third person.

There were obvious strategic reasons which dictated defense counsel's caution. Cowan's attorneys understandably apprehended that, if these defenses were emphasized, the jury might assume that Cowan was the shooter, and that this might dilute and detract from the basic defense theory that it was Sammie Giles who shot the decedent. Indeed, one of Cowan's attorneys candidly acknowledged her concern:

> I think the problem with that is it makes the defense sound like we're telling you we didn't do it, but if you think we did it then we have another reason, *and that sounds bad.*

> \* \* \* \* \* \*

> [Self defense] shouldn't be put as being our theory, because it *makes it look like we're trying to pull the wool over the jury's eyes.*

(Emphasis added.)

To avoid this impression, the defense had to tread very cautiously. Counsel therefore made two important strategic decisions. First, the defense would seek the instructions on self-defense and defense of a third person only if the prosecutor's request for an aiding and abetting instruction

was granted, and even then, only as to felony murder; this was because the prosecutor's aiding and abetting request was based on the theory that Giles did the shooting, and was thus potentially helpful to Cowan's basic defense. Second, Cowan's attorneys did not want the judge to include self-defense or defense of a third person in his instruction on the defense theory of the case; rather, they wanted this issue to appear to emanate from the judge, not from the defense.

### B. Discussions Prior to Closing Argument

It was the government's secondary theory—that Cowan was guilty of felony murder as an aider or abettor even if Giles did the shooting—that triggered defense counsel's limited request for instructions on self-defense and defense of another:

> THE COURT: Well, they are asking for self-defense.
>
> MR. COBB [prosecutor]: I don't know.
>
> THE COURT: They are.
>
> MS. SUPLER [defense counsel]: Your Honor, *that would only be if the court allows the government to argue and give the instruction of the aiding and abetting theory for a felony murder. If the court doesn't then no.* Our theory is that we did not do the shooting, therefore, we're not guilty for that reason alone. And we wouldn't need the self-defense or a defense of other instruction. Because, remember, we are asking the Court not to couch it in that the defendant used self-defense, but if the shooter used self-defense. See, that's perfectly consistent with our theory. *If the court doesn't allow the aiding and abetting argument by the government, then we don't need those instructions because our defense is that we weren't the shooter.* It was Sammy Giles.

(Emphasis added).

When the judge expressed some bewilderment, Cowan's attorney explained that "if Mr. Giles shot in self-defense, and we can also be guilty because of his shooting, then we get the transferred self-defense intent." Counsel continued as follows:

James Cowan did not have a gun in his possession and did not participate in a drug transaction. And, then, *if the— and only if the court is going to allow the government the aiding and abetting theory on the felony murder,* then we'll ask for the three instructions in the order I presented with the language I presented.

(Emphasis added).

The trial judge fully understood, and counsel for both parties agreed, that the government's request for an aiding and abetting instruction was limited to the felony murder count, and that the request for instructions on self-defense and defense of a third person were similarly limited (and also conditioned on the aiding and abetting instruction):

> THE COURT: Second degree murder only if the jury finds beyond a reasonable doubt that it was Cowan that did the shooting.
>
> MR. COBB: Yes.
>
> THE COURT: Now, *insofar as the felony murder, I will give aiding and abetting on it,* government's theory that Cowan did the shooting, the defendant's theory that Giles did the shooting, but in any event, in any event, *if Giles did the shooting or whoever did the shooting, it was done in self-defense, either of the person or of the other person.*
>
> All right?
>
> MS. SUPLER: *That's correct.*

(Emphasis added).

At no time prior to closing argument did the defense ask for an instruction on self-defense or defense of a third person with respect to any offense other than felony murder. Moreover, Cowan's attorney emphasized several times that she did not want these instructions to be given if the court did not instruct on aiding and abetting. This was the posture of the case when counsel delivered their closing arguments.

### C. The Closing Arguments and the Discussions that Followed

During his closing argument, the prosecutor argued that Cowan shot Knox. He also told the jurors, however, that the judge was going to instruct them on the defense theory that Giles was the shooter. On that hypothesis, the prosecutor explained that if the two defendants were working in concert, Cowan could be guilty of felony murder as an aider an abettor. In spite of the earlier exchanges between court and counsel about self-defense and defense of a third person, however, Cowan's attorney mentioned neither of these theories when it was his turn to present his final argument.

Upon the completion of the closing arguments, the judge and the attorneys revisited the question of the instructions. Cowan apparently [5] takes the position that, during the course of these post-argument discussions, his attorneys changed their earlier position and asked unconditionally for instructions on self-defense and defense of a third person, whether or not the judge ultimately instructed on aiding and abetting. The record does not bear him out.

Cowan's attorney suggested to the judge, in connection with the felony murder instruction, that "the court should say purposefully kills a human being without justification because of our possible self-defense case." The judge responded that "I don't know where you got self-defense...." He complained that

> I don't know what you're saying. The guy wasn't there, that he didn't do anything, and that Giles did it. I just don't know what your position is.

Cowan's attorney explained that

> we would ask for the self-defense instruction *that we asked* and [the] government asked after the theory of defense instruction.

(Emphasis added). Evidently, the defense request remained the same as it had been prior to closing argument.

The prosecutor complained, however, that Cowan's attorneys had not mentioned self-defense in closing argument, but that they were nevertheless inconsistently seeking an instruction on that theory. Defense counsel immediately countered with the same position which she had taken prior to closing argument:

> MS. SUPLER: Your Honor, our position is that Sammy Giles did the shooting. Now the jury can find either that we weren't out there in which case they are not going to need to worry about self-defense. But they could find that [we] were out there. They could find *that we're guilty of the attempt distribution but find that Sammy Giles had a self-defense claim and, therefore, we should have the right to that as well.*

(Emphasis added).

The judge then indicated that, if there was to be a self-defense instruction, it should be a part of the defendant's theory of the case. Defense counsel demurred, because

> the jury could find that they could not believe our theory of the defense. And if they choose not to believe our theory of defense that Sammy, Sammy Giles shot it, then they could also believe that *our client shot in self-defense....*

(Emphasis added). The italicized phrase represents the first occasion in which a self-defense claim was articulated by the defense outside the context of aiding and abetting.

The judge, however, was not persuaded. He indicated that if the defense attorneys did not want self-defense and defense of a third person to be a part of the defendant's theory of the case, he would not instruct on those defenses. Cowan's attorney remonstrated that since she was contending that Giles was the shooter, it would "sound

---

**5.** We use the word "apparently" because, in his reply brief in this court, Cowan failed altogether to contest the government's position that the request for instructions on self-defense and defense of a third person were conditioned on the judge's giving an "aiding and abetting" instruction as to felony murder. At oral argument, however, Cowan sought to refute the government's contentions on that issue.

bad" to make self-defense an alternative defense theory of the case. The attorney then made the argument on which Cowan now primarily relies as proof that his point was preserved:

> MS. SUPLER: No, Your Honor, because when there—when self-defense is raised in a case, when the defense has met [its] prima facie burden, which we have here, because we have a right to the instruction, *then it becomes an element the government has to disprove.* So it doesn't have to be our theory of defense. But they still have to disprove it, because it has been raised. And, so, the court shouldn't say that it's our, that it's an alternative theory. Because it's not. It's an element that the government must disprove. And, so, it should be almost like another element.

(Emphasis added).

If this passage stood alone, one might reach the conclusion that counsel had changed her previous position and was now asking for self-defense and defense of a third person instructions for second-degree murder as well as for felony murder, and that she wanted the judge to give those instructions independently of any question of aiding and abetting. On the very next page of the transcript, however, Cowan's attorney dispelled any such notion, and reiterated that her request was limited to felony murder and was still conditioned on the judge's also instructing the jury on aiding and abetting. She stated that proof that the shooting was not done in self-defense or defense of another has become "another element *to the felony murder, not to the second degree murder because we aren't claiming self-defense at all there....*" (Emphasis added). The judge ultimately decided not to instruct at all on self-defense or defense of a third person.

He also declined to instruct on aiding and abetting.

### D. Legal Considerations

 Rule 30 of the Superior Court's Rules of Criminal Procedure provides in pertinent part as follows:

> No party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection.

In the absence of a timely objection, a conviction may be reversed only for plain error. *Watts v. United States,* 362 A.2d 706, 708–09 (D.C.1976) (en banc). Plain error contemplates a clear showing of a miscarriage of justice. *Hunter v. United States,* 606 A.2d 139, 141 (D.C.1992).

 There is no evidence that Cowan ever requested an instruction on self-defense or defense of another with regard to the charges of second-degree murder, attempted distribution of cocaine, or CPWOL. Such instructions have no conceivable relevance to the drug and weapons counts, and Cowan's attorneys repeatedly disclaimed any interest in self-defense or defense of a third person in relation to the second-degree murder charge. Cowan's request that we reverse these three convictions is totally lacking in merit.

 His position is not appreciably more persuasive with respect to his felony murder conviction. On several occasions prior to closing argument,[6] defense counsel unambiguously stated that they were requesting instructions on self-defense and defense of a third person only if the judge gave an "aiding and abetting" instruction on felony murder. In doing so, Cowan's attorneys invited the judge not to instruct

---

6. In general, Rule 30 requires that requests for instructions be submitted prior to closing argument. *Shreeves v. United States,* 395 A.2d 774, 786–87 (D.C.1978), *cert. denied,* 441 U.S. 943, 99 S.Ct. 2161, 60 L.Ed.2d 1045 (1979); *United States v. Watson,* 282 U.S.App.D.C. 305, 309–10, 894 F.2d 1345, 1349–50 (1990). The judge's further discussion of instructions after argument did not constitute a waiver of the rule. *Watson,*

*supra,* 282 U.S.App.D.C. at 309–10, 894 F.2d at 1349–50; *see also Life Ins. Co. v. San Francisco,* 84 U.S. (17 Wall) 672, 679, 21 L.Ed. 698 (1873). Even if Cowan had requested instructions after closing argument different from those which he requested prior to argument, there is at least a substantial question whether the post-argument request would have been timely.

on self-defense and defense of a third party if no aiding and abetting instruction was given. Courts are especially reluctant to reverse for plain error when it is "invited." *United States v. Mangieri,* 224 U.S.App. D.C. 295, 305, 694 F.2d 1270, 1280 (1982).

After closing argument, Cowan's attorneys essentially reiterated the position which they had taken previously. At the very least, they did not clearly change it. On one occasion, to be sure, counsel spoke about self-defense even if Cowan was the shooter, but she did not revise her prior request to charge. She also suggested that a showing that a defendant did not act in self-defense or in defense of another is in effect an element which the prosecution must prove. On the very next page of the transcript, however, counsel reiterated that she was not seeking a self-defense instruction for second-degree murder, an offense which did not involve aiding or abetting.

Rule 30 precludes reversal of Cowan's conviction for alleged instructional error unless he stated his thesis in the trial court *distinctly. See Britton v. United States,* 112 U.S.App.D.C. 207, 208, 301 F.2d 531, 532 (1962) (per curiam). Cowan having clearly and unambiguously linked self-defense and defense of a third person with aiding and abetting, it was surely incumbent upon his attorneys, if they were changing their position, to make that change plain and unambiguous, so that the judge could readily understand it. As we recently noted in *Hunter, supra,* 606 A.2d at 144,

> [o]bjections must be made with reasonable specificity; the judge must be fairly apprised as to the question on which he is being asked to rule. Points not asserted with sufficient precision to indicate distinctly the party's thesis will normally be spurned on appeal.

Nowhere in this record did Cowan's attorneys state "distinctly," with "reasonable specificity," or with "sufficient precision" that their initial (and carefully conceived)

position had become inoperative, and that they were now requesting self-defense and defense of a third person instructions unconditionally and across the board. Since the judge never gave an aiding or abetting instruction, the event upon which Cowan's instructional request was conditioned never materialized. Accordingly, his objections in this court to the charge as given must fail, for "parties may not assert one theory at trial and another on appeal." *Hackes v. Hackes,* 446 A.2d 396, 398 (D.C.1982).[7]

## III.

### HARMLESS ERROR ANALYSIS

■ Even if Cowan had adequately preserved as an issue the judge's failure to instruct on self-defense or defense of another—which he did not—we are satisfied that, under the unique circumstances of this case, any error would have been harmless.

Cowan's attorney did not mention these defenses during his entire closing argument. If the judge had instructed as the defense conditionally requested, the jurors would have heard no more than a recitation of principles of self-defense or defense of a third person, with no presentation from counsel as to how these principles applied to the present case. Given the position taken by Cowan's attorneys, the discussion would in all probability have appeared to the jurors to be essentially irrelevant to the controversy as defined by the parties.

Moreover, as our discussion in Part II of this opinion reveals, Cowan's attorneys recognized that the subject of self-defense and defense of another was a dangerous one for them because it compromised their basic position that Cowan did not shoot Knox, and that perhaps he was not even on the scene. In other words, in the absence of an aiding and abetting instruction, defense counsel themselves wished, at least initially, to avoid any instructions on self-defense or defense of another because of the dan-

7. The government also argues that the evidentiary predicate for instructions on self-defense or defense of a third person was insufficient, that Cowan's position requires a "bizarre reconstruc-

tion" of the evidence, and that a drug dealer who arms himself may not claim self-defense on a record such as this one. We need not and do not reach these issues.

ger that such instructions would hurt, rather than help, Cowan's case. The defense was conducted by experienced and able attorneys from the Public Defender Service, whose own repeated disavowal of the proposed instructions which Cowan now claims the judge should have given itself suggests that the failure to give them was harmless. *See Hunter, supra,* 606 A.2d at 145; *Parks v. United States,* 451 A.2d 591, 613 (D.C. 1982), *cert. denied,* 461 U.S. 945, 103 S.Ct. 2123, 77 L.Ed.2d 1303 (1983).

Accordingly, even if the judge's refusal to give the instructions at issue had been error, we are able to say "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946).[8] We, therefore, also affirm on this alternative ground.

## IV.

### RESPONSE TO DISSENT

Our dissenting colleague accuses the majority of selectively quoting "isolated passages" from the record and, in particular, of ignoring the existence of the two competing scenarios that preoccupied counsel at the time jury instructions were being discussed, the first scenario being that Cowan shot Knox and the second being that Giles was the shooter. Curiously, she also invokes as support for her position comments made by defense counsel not at the time jury instructions were being discussed, but at the time the defense successfully moved for a judgment of acquittal as to first-degree murder.

With respect to the allegations of selective quotation, the majority opinion in-

cludes a discussion of everything of which we are aware that defense counsel said on the critical subjects, namely whether the instruction on self-defense and defense of a third party were being sought conditionally or unconditionally and whether counsel wanted these instructions to apply to any charge other than felony murder. Chief Judge Rogers claims somewhat vaguely that the positions of counsel evolved as the trial proceeded, but her opinion does not contain a single passage from the record in which Cowan's attorneys clearly (or even implicitly) requested these instructions at all for second-degree murder, or unconditionally for felony murder. If an unconditional request for such instructions existed, it would surely appear prominently in the dissent.

Contrary to our colleague's suggestion, the majority has not ignored the fact—undisputably a critical one—that counsel were focusing, in making their requests for jury instructions, on the existence of two different hypotheses as to the identity of the shooter. See the discussion at pp. 499–500, *supra.* Indeed, as we have endeavored to show, it was the defense attorneys' concern that their prime theory ("Giles did it") must not be compromised that led them to condition so narrowly their requests for instructions on self-defense and on defense of a third party.

Finally, the dissent states, citing Supp. Rec. 6, Tr. 88–89, that Cowan's attorneys "argued that appellant had acted in self-defense and was entitled to a self-defense instruction" at the time they moved, successfully, for a judgment of acquittal on the charge of first-degree murder. That discussion, however, was not about jury instructions, but about the MJOA. We have found no indication in the cited transcript pages (or anywhere else in the argu-

---

8. Since Cowan's attorneys insisted with unrelenting rigor that self-defense and defense of a third person were *not* a part of the defendant's theory of the case, this is not a case in which the court refused to instruct on the defendant's theory. *Cf., e.g., Gethers v. United States,* 556 A.2d 201, 204 (D.C.1989) (instruction on defendant's theory of the case *must* ordinarily be given) and the other authorities for this proposition cited

by our dissenting colleague. *Post* at 514. Indeed, the judge gave a detailed instruction on the defense theory of the case (which included assertions that Cowan did not know Knox, was not selling drugs, and did not know Giles would shoot Knox) even though there was no evidentiary predicate for a substantial part of the instruction.

ment on the MJOA) that Cowan's counsel requested a self-defense jury instruction.[9] The position of Cowan's attorneys in the circumstances under which they sought such an instruction was articulated at the time instructions were discussed, and is set forth exhaustively in Part II of this opinion.

## V.

## CONCLUSION

 For the foregoing reasons, the case is remanded to the trial court, which is directed to vacate one of Cowan's two murder convictions. In all other respects, Cowan's convictions must be and each is hereby

*Affirmed.*[10]

ROGERS, Chief Judge, dissenting in part and concurring in part:

The majority's analysis is, in my view, most critically flawed because it fails to come to grips with the two factual scenarios presented to the jury: one presented by the government in which appellant was the shooter of Knox, the drug purchaser, and a second scenario presented by the defense in which Giles, the seller of drugs, was the shooter. By extracting isolated portions of the transcript, the majority concludes that appellant tied his request for self-defense instructions to the government's request

for an aiding and abetting instruction with regard to felony murder. Majority opinion at 502. Yet the evolution of the parties' positions as the trial progressed shows, as the trial judge recognized, that each side came to realize that the other side's scenario might prevail with the jury, and accordingly, requested corresponding instructions. While the majority concludes that defense counsel's position regarding self-defense instructions was "clear[ ]" and "unambiguous[ ]," *see* majority opinion at 503, the majority ignores the trial judge's view of defense counsel's position. *See infra* at 509–510. Accordingly, I respectfully dissent.

## I.

To understand the evolution of the two scenarios, a more complete review of the facts and the proceedings is required than that presented by the majority opinion. The charges arose out of a sale of cocaine that went awry, resulting in the prospective buyer's death. As the defense position became clear, the government adjusted its position and the defense, in turn, reacted.

The government presented four important witnesses, of which Samuel Giles was the key witness. Giles testified that in the early morning hours of November 20, 1986, he and appellant were together at Giles' apartment watching the movie "Scarface" and counting money. After watching some

---

9. Given the normal sequence of events at trial, such a request at that stage of the proceedings would have been quite unusual.

10. Cowan's remaining contentions are unpersuasive. He claims that the judge should have directed the jury to acquit him on the felony murder charge, but there was ample evidence that Cowan shot Knox while he and Giles were attempting to distribute cocaine, and the trial judge properly denied his motion for judgment of acquittal. In determining whether that motion should have been granted, we consider the evidence in the light most favorable to the government, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw reasonable inferences. *Langley v. United States*, 515 A.2d 729, 731 (D.C.1986). The jury could reasonably conclude that "the lethal act," *i.e.,* the shooting of Knox, was in furtherance of the predicate offense of attempted distribution of cocaine, and that the attempted distribution was still ongoing when the fatal

shot was fired. *See, generally, United States v. Heinlein*, 160 U.S.App.D.C. 157, 168–69, 490 F.2d 725, 736–37 (1973).

Cowan also complains that the trial judge failed to instruct the jury, in relation to the felony murder count, that the killing must be in furtherance of the felony. The judge told the jurors, instead that in order to convict Cowan, they were required to find that "the defendant killed the deceased while perpetrating or attempting to perpetrate the offense of distribution of a controlled substance." We agree with Cowan that the formulation which he now suggests is more appropriate. *See, e.g., Christian v. United States*, 394 A.2d 1, 49 (D.C.1978), *cert. denied*, 442 U.S. 944, 99 S.Ct. 2889, 61 L.Ed.2d 315 (1979). Cowan did not object to the instruction as given, however, and Super.Ct.Crim.R. 30 and the "plain error" rule preclude reversal on these facts.

of the movie, they left the apartment, with Giles carrying the cocaine and appellant carrying the gun "[f]or protection." Once on the street, a man named Knox approached them and called out Giles' name. When Giles turned around, Knox asked him if he had any cocaine, and Giles responded that he did. Knox asked for two bags, and after Giles had given them, Knox asked for two more. At this point Giles said to Knox, "Either you've got $98 or you've got $100 bill." Knox said he had the money, and Giles told him to give it to him. Shortly thereafter, Knox reached into his pocket and said either "Give me anything" or "Give me everything." According to Giles, at that point appellant yelled, "Duck, Soldier," and shot Knox.[1]

Giles ran, went home, and later found appellant on his porch. According to Giles, appellant put the gun in Giles' mouth and told him he would kill him if he told anyone what had happened. On cross-examination, Giles admitted that he had pleaded guilty to second-degree murder of Knox and another man, and that the prosecutor had spoken on his behalf at that proceeding. Giles' testimony was impeached with three earlier versions of the events that he had given—to the police, to the judge who accepted Giles' pleas, and to the grand jury.[2]

Lillian Holcomb, who was on her way to her grandmother's house after getting high on drugs, testified that she saw Giles, appellant, and another man talking to a guy in the breezeway of an apartment building. After that guy put his hand in his pocket,

appellant pulled out a gun and shot him. Appellant and the other person ran together while Giles ran in another direction. On cross-examination, she was impeached with her grand jury testimony that appellant had actually been standing at the end of the breezeway and did not shoot, and that Giles and the person standing next to him looked like they had guns.[3]

Officer Dicks of the Metropolitan Police Department testified that when he arrived on the scene of the shooting he found Knox lying on the pavement. Knox's hand was in his left front jacket pocket and a hammer handle was protruding from that pocket.[4]

Tina Duvall, Giles' first cousin and appellant's former girlfriend, testified that appellant had left the apartment on the morning in question with cocaine and a gun, and that three to five minutes after he and Giles departed, she heard a gunshot. Upon running to the window, she saw the victim staggering through the breezeway. According to Duvall, when Giles and appellant returned to the apartment, Giles had a $100 bill and appellant stated that he shot the guy because he was getting ready to stick up one of his soldiers. She also identified the gun and shoulder holster recovered in the bedroom shared by Giles and appellant as belonging to appellant. On cross-examination, Duvall was impeached with her prior statements, including her statement to the police that when appellant had returned to the apartment he had said that he

---

1. Giles also testified that another man, Watkins, was standing on Giles' porch a little farther away than appellant at the time of the shooting.

2. Giles' memory was also refreshed by the fact that upon entering his pleas, he had told the judge that when Knox had asked for his money back, Giles had responded, "You done popped the seal on my bag," referring to the fact that Knox had already opened one of the bags. Knox responded "F—— that," and then reached into his pocket. Giles claimed he had not had time to give Knox his money back in response to his request. He denied thinking that Knox had reached into his pocket in order to give him (Giles) more money, but claimed that he did not know what Knox was going to do. Giles had not mentioned getting money from Knox when he had testified before the grand jury.

3. Holcomb also admitted that being high on drugs could affect how one sees things, and that she had viewed these events from a distance of forty-two feet, not twelve to fifteen feet as she had testified on direct. In addition, she described various criminal charges she had faced after the shooting, admitting that she had been permitted to plead to lesser charges.

4. Another officer testified that the murder weapon had been found underneath a mattress in one of the bedrooms at Giles' apartment. A firearms expert testified that the victim had been shot from a distance of more than three or four feet.

thought Knox was going to rob them and that it looked like Knox was going into his pocket to get a gun.[5]

The government rested, and the defense moved for a judgment of acquittal notwithstanding the evidence.[6] At this point, as relevant to this appeal, the two scenarios emerged—appellant as the shooter and Giles as the shooter.

First, the defense requested self-defense instructions on the basis of the government's theory that appellant was the shooter. During discussion of the defense motion, in response to the prosecutor's argument that there was evidence of premeditation to support the first-degree murder charge, defense counsel argued that appellant had acted in self-defense and was entitled to a self-defense instruction. The trial judge questioned whether the defense was entitled to a self-defense instruction in a felony murder drug distribution case and asked both counsel to prepare memoranda. At the next court session, after further discussion about self-defense, the judge granted the defense motion for a judgment of acquittal on first-degree murder and decided to instruct the jury on second-degree murder since the jury could find that appellant was the shooter.

Self-defense was also discussed in connection with the defense theory that Giles was the shooter. Concerned that the jury might conclude, contrary to the government's theory of the case, that Giles had been the shooter, the prosecutor requested that the judge give an aiding and abetting instruction on felony murder in response. The prosecutor's request for aiding and abetting on the felony murder count also prompted a corresponding reaction from the defense. Defense counsel objected, and argued that if the judge did instruct on aiding and abetting, then appellant was entitled to instructions on self-defense and defense of another. The defense theory was that if the jury did find Giles was the shooter, then Giles was entitled to use force to defend himself or appellant, and that under the principle of transferred intent, appellant could not be found guilty of aiding and abetting. Defense counsel submitted proposed written instructions on self-defense and defense of another, and the trial judge tentatively agreed to give them.[7]

After closing arguments, the discussion of the jury instructions continued.[8] Defense counsel made two requests; first, that the trial judge instruct the jury on the primary defense theory—that Giles was the shooter, and second, that the trial judge include instructions on self-defense and defense of another with the rest of the instructions, and not as an alternative defense theory. Defense counsel expressly argued that if the jury rejected the defense theory that Giles was the shooter and found instead that appellant had been the shooter, the jury should be instructed that the government had the burden to disprove self-defense. Defense counsel also declined to advise the judge whether the defense claimed that appellant had not been at the scene of the shooting.

The trial judge was concerned that defense counsel had not argued self-defense during closing argument and also did not wish the jury to be instructed that the alternative defense to the government's theory was that appellant had acted in self-defense. In addition, based on what he

---

**5.** Reading the statement refreshed Duvall's memory that Giles had told her when he returned to the apartment that morning that he had put the gun upstairs, and that appellant had "shot the guy."

**6.** The defense did not present any evidence.

**7.** The majority opinion, *see* majority opinion at Part IV, ignores the record which shows that defense counsel requested a self-defense instruction and provided the trial judge with a proposed written instruction.

**8.** In closing argument, the prosecutor addressed both scenarios—appellant as the shooter and Giles as the shooter—and appellant's self-defense claim. The defense closing argument likewise addressed the two scenarios, focusing on the insufficiency of the government's evidence that appellant was the shooter and the indications that Giles was the shooter. Defense counsel did not discuss appellant's self-defense contentions during closing argument.

deemed to be inconsistencies in the various defense theories, the judge reversed his earlier decision and declined to give the self-defense instructions. Later, the judge also reversed his earlier decision to give an aiding and abetting instruction on the felony murder count.

## II

The government makes four arguments in support of the trial judge's refusal to give the self-defense instruction. Upon examination, they are unpersuasive.[9]

*Linkage.* The government maintains, and the majority agrees, that defense counsel waived the request for a self-defense instruction. Contrary to the majority's reconstruction of the record and its reliance on isolated excerpts, the record of the trial refutes the contention that the trial judge properly refused to give the requested instructions because they had been linked to the government's aiding and abetting instruction, which was ultimately not given.[10]

As previously noted, the discussion of self-defense arose in two contexts: first, under the government's theory that appellant was the shooter, and second, under the defense theory that Giles was the shooter. These two scenarios make clear that the self-defense instructions applied to both contexts, and that waiving such an instruction in one context was not tantamount to waiving it in the other. The defense first requested the self-defense instruction at the close of the government's case when the defense asked for the instruction in response to the government's theory that appellant was the shooter. A second request for self-defense instructions was made by the defense in response to the government's request for the aiding and abetting instruction on the felony murder charge. When, as the majority's excerpts from the record point out, defense counsel waived the request for self-defense instructions in connection with the defense theory that Giles was the shooter, however, defense counsel did not also waive the request in connection with the government theory that appellant was the shooter.[11]

---

**9.** At trial, the government did not present the legal memorandum requested by the trial judge regarding whether or not appellant was entitled to a self-defense instruction in a felony murder case.

**10.** *See Adams v. United States,* 558 A.2d 348, 350 (D.C.1989) (rejecting the government's argument that defense counsel's statement at trial that he was "no longer requesting self-defense" precluded raising the failure to instruct on appeal).

**11.** Toward the end of the discussion of the instructions to be given to the jury, the defense emphasized that it had uncoupled its request for self-defense instructions from the aiding and abetting issue:

[DEFENSE COUNSEL]: Right. But, Your Honor, he could—he could still believed. And if the jury believes that Mr. Cowan was the shooter, it wouldn't even matter if Sammy Giles didn't think he had a right to self-defense because for defense of others is what the other person believes the person had. And, so, I think both of those instructions [self-defense and defense of a third person] are important for the jury to hear along with our theory of defense instruction.
THE COURT: Well, I will put it here then.
\* \* \* \* \* \*
[DEFENSE COUNSEL]: ... also the jury could find that they could not believe our theory of the defense. And if they choose not to believe our theory of defense that Sammy, Sammy Giles shot it, then they could also believe that our client shot in self-defense and that's why the defense instruction _____
THE COURT: Well, then I will put that in there. If you do not accept this defense, then, Cowan says that he acted in self-defense. And the—that if you find that he, beyond a reasonable doubt, that he did shoot the Knox, that he did so in self defense, or if you find that, yeah, that's it. You don't believe that.
[DEFENSE COUNSEL]: I don't think the Court needs to do that extra language. I think the Court can read our theory of defense [that Giles shot Knox] and then just read the self-defense instructions.

\* \* \* \* \* \*

THE COURT: If they reject the theory that it was Giles.
[DEFENSE COUNSEL]: Then it's got to be Mr. Cowan acting in self-defense.
THE COURT: That's right Mr. Cowan's acting in self-defense or self-defense of the third party. And I have got to give that. If that's your theory ...

Defense counsel argued to the trial judge that once self-defense is raised by the evidence, it becomes an element that the government has to disprove and it does not have to be a theory of the defense. Defense counsel, therefore, sought to have the trial judge give the self-defense instructions without stating that self-defense was an alternative defense theory.[12] As was true when defense counsel argued in support of the motion for judgment of acquittal, at this point the requests for the self-defense and defense of another instructions were no longer tied to the aiding and abetting instruction.

To recapitulate: The defense first raised a self-defense claim in moving for a judgment of acquittal on all counts at the close of the government's case-in-chief. Specifically, in addressing the premeditated murder charge, the defense argued that "all of the Government's witnesses suggest the possibility of a self-defense claim. Even if the Court credits all the witnesses that it was Mr. Cowan that fired the shot." The prosecutor argued that self-defense was a question for the jury. The trial judge granted the defense motion for acquittal on first-degree murder and decided to instruct on second-degree murder on the basis that the jury could find that appellant was the shooter.

After the judge granted the defense motion on first-degree murder, the prosecutor requested an aiding and abetting instruction on felony murder if the jury found—in accordance with the principal defense theory—that Giles had been the shooter. This request focused on the defense theory only, the prosecutor viewing the second-degree murder and carrying a pistol counts as

separate matters in which the jury would have to find that appellant was the shooter. The defense argument, in turn, that it did not need the self-defense instructions if the judge did not give the aiding and abetting instruction on felony murder, was based on two grounds: first, that would be consistent with the defense theory that Giles was the shooter, and second, that second-degree murder count should not go to the jury, only felony murder should.

Defense counsel continued, however, to press a self-defense claim in the event that the jury determined—in accordance with the government's principal theory—that appellant had done the shooting. The trial judge acknowledged this when he stated that he would give the aiding and abetting instruction on felony murder, a second-degree murder instruction, and a self-defense instruction regardless of who the jury found to be the shooter.[13] In the judge's words:

> Now, insofar as the felony murder, I will give aiding and abetting on it, Government's theory that Cowan did the shooting, the defendant's theory that Giles did the shooting, but in any event, in any event, if Giles did the shooting or whoever did the shooting, it was done in self-defense, either of the person or of the other person.

This was where matters stood when counsel made their closing arguments to the jury.[14] Afterwards, during discussion of the jury instructions, the defense repeated that, in addition to the felony murder self-defense instruction, it wanted a self-defense instruction if the jury rejected the defense theory (that Giles was the

12. Defense counsel asked the judge to instruct the jury on the defense theory that appellant did not do the shooting, but also to instruct that "there is another principle of law, ladies and gentlemen, that if a person acts in self-defense, just not even stating that it's either side's theory, or that it's a defense theory, just there is another principle and the government has the burden on that principle."

13. Defense counsel indicated that the instructions proposed by the defense, by substituting the word "shooter" for "defendant," would fit both the defense and government theories of

who was the shooter. There was no objection by the prosecutor in response to the judge's comments or defense counsel's statement.

14. During closing argument the prosecutor argued both the government and defense theories of the case—that the evidence showed appellant was the shooter (government's theory) and that if the jury found Giles was the shooter (defense theory), then appellant was guilty as an aider and abettor. The prosecutor also addressed self-defense as it applied to Giles as the shooter and as it applied to appellant as the shooter.

shooter) and found that appellant was the shooter. As defense counsel explained to the judge,

> [W]hen self-defense is raised in a case, when the defense has met their prima facie burden, which we have here, because we have right to the instruction, then it becomes an element the Government has to disprove. So it doesn't have to be our theory of the defense. But they still have to disprove it, because it has been raised.

Clearly, the defense was no longer conditioning the request for the self-defense instruction upon the scenario that Giles had done the shooting. In view of the evidence from which a reasonable jury could find that appellant had been the shooter, the issue of aiding and abetting of felony murder was no longer relevant to the self-defense request with regard to second-degree murder.[15]

*Sufficiency of evidence to warrant instruction.* Second, the government maintains that there was insufficient evidence to show that appellant actually and reasonably believed that the decedent threatened to use deadly force. However, the trial judge initially found that there was sufficient evidence to warrant a self-defense instruction, and was clearly correct.[16]

As the court observed recently, in noting that "[t]he concept appears to have fairly deep roots in this jurisdiction,"

> 'As a general proposition, a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor.' [citations omitted] Moreover, in the *Mathews* [*v. United States*, 485 U.S. 58, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988),] decision, the Supreme Court made clear that the defendant's entitlement to such an instruction is not canceled or diminished by the claim of inconsistent, or even contradictory, defenses, even those inconsistent with the defendant's testimony.

*Bostick v. United States,* 605 A.2d 916, 917 & n. 7 (D.C.1992) (quoting *Mathews, supra,* 485 U.S. at 63, 108 S.Ct. at 887, and in note 7 citing *Womack v. United States,* 119 U.S.App.D.C. 40, 336 F.2d 959 (1964)).[17] *See Guillard v. United States, supra* note 16, 596 A.2d at 62–64; *Reid v. United States* 581 A.2d 359, 367 (D.C.1990); *Adams, supra,* 558 A.2d at 349. "[S]o long as a reasonable juror acting reasonably could credit the evidence," the defendant is entitled to the requested instruction. *Goddard v. United States,* 557 A.2d 1315, 1316 (D.C.1989). Accordingly, the defendant "is

**15.** The fact that defense counsel did not want the trial judge to instruct the jury that self-defense was an alternative defense theory cannot be dismissed as a defense ploy. The evidence entitled appellant to the self-defense instruction even if he had simply entered a general denial to the charges and offered no theory of defense other than to put the government to its proof. *See Mathews v. United States,* 485 U.S. 58, 65, 108 S.Ct. 883, 887–88, 99 L.Ed.2d 54 (1988). The defense closing argument took this tack.

**16.** Viewing the evidence in the light most favorable to appellant as we must, *see Guillard v. United States,* 596 A.2d 60, 62 (D.C.1991), the government's eyewitness evidence would support a finding by a reasonable jury that appellant could have had reason to fear that Knox was about to use deadly force upon him or Giles. *See Bowler v. United States,* 480 A.2d 678, 682 n. 8 (D.C.1984). Giles testified that shortly after he had given Knox four bags of cocaine, Knox cursed, told Giles to "Give me everything," and reached into his pocket. At that point appellant yelled to Giles "Duck, soldier," and shot Knox. The government's other

eyewitness, Lillian Holcomb, also testified that it was not until after Knox had put his hand into his pocket that the gunman shot him. Officer Dicks' testimony confirmed that Knox had his hand in his jacket pocket which contained a hammer and that the hammer handle could be seen protruding from his pocket. This evidence supported an inference that appellant was frightened by Knox's move to his pocket after demanding that Giles give him everything and that appellant had acted in self-defense. The inference was strengthened by Tina Duvall's testimony that when Giles and appellant returned to the apartment that night, appellant had stated that "he shot the guy because he was getting ready to stick up one of his soldiers."

**17.** In *Mathews, supra,* 485 U.S. at 62, 108 S.Ct. at 886, the Court held that "even if the defendant denies one or more elements of the crime, he is entitled to an entrapment instruction whenever there is sufficient evidence from which a reasonable jury could find entrapment."

entitled to a jury instruction on any issue fairly raised by the evidence, no matter how weak that evidence may be," although no instruction need be given in the absence of a factual or legal basis for it. *Doby v. United States*, 550 A.2d 919, 920 (D.C. 1988) (citations omitted); *Carter v. United States*, 531 A.2d 956, 959 (D.C.1987) (same). *See also Gray v. United States*, 549 A.2d 347, 349 (D.C.1988) (requested instruction on defendant's theory of the case which negates guilt must be given where supported by any evidence, however weak) (citations omitted); *Stack v. United States*, 519 A.2d 147, 154 (D.C.1986) (theory of case; "any evidence") (quoting *Montgomery v. United States*, 384 A.2d 655, 660 (D.C.1978)). In reviewing the trial court's refusal to give a defense instruction, the court must view the evidence in the light most favorable to the defendant. *Guillard, supra*, 596 A.2d at 62; *Adams, supra*, 558 A.2d at 349. *See Harling v. United States*, 387 A.2d 1101, 1103 (D.C.1978) (either evidence of the defense or prosecution); *Guillard, supra*, 596 A.2d at 63 (testimony of government witnesses); *Reid, supra*, 581 A.2d at 367.

The government's contention that Knox never threatened to use deadly force, and thus there was no actual threat of imminent harm, incorrectly views the evidence in the light most favorable to the government; it is appellant's reasonable belief that he is in imminent peril of death or serious bodily harm that gives rise to a self-defense claim. *McPhaul v. United States*, 452 A.2d 371, 373 (D.C.1982). Under the circumstances as described by Giles and Holcomb, appellant could have reasonably believed that Knox was demanding his money back even though he had already opened one of the drug packets, and that when Giles protested, Knox's hand movement to his pocket was for a weapon. Likewise, the government's view that Knox's statement "Give me anything," and his movement to his pocket was ambiguous conduct, and that the evidence of any argument or verbal threat between Giles and Knox was weak at best, views the evidence from the government's perspective, and is inconsistent with the "weak" evidentiary

showing necessary for a requested instruction.

Furthermore, the cases relied on by the government are distinguishable. In *Byrd v. United States*, 364 A.2d 1215, 1220 (D.C. 1975), for example, there was no evidence to support a self-defense claim since the only evidence was that the victim had not had anything in his hands when the defendant returned to the scene of an earlier argument to shoot him. Here, in contrast, there was evidence indicating that Knox was armed. Similarly, in *United States v. Peterson*, 157 U.S.App.D.C. 219, 483 F.2d 1222, 1232, *cert. denied*, 414 U.S. 1007, 94 S.Ct. 367, 38 L.Ed.2d 244 (1973), the defendant returned to the scene of a dispute with a weapon. By that time the victim had gotten into his car and was prepared to leave when the defendant loaded his pistol, commanded the victim not to leave, and dared him to enter his property. *Id.* at 229–30, 483 F.2d at 1233. Here, unlike *Peterson*, there was no evidence that appellant had instigated the trouble. A reasonable jury could find that appellant reasonably thought that Knox was reaching into his pocket for a weapon.

Other decisions more closely on point make clear that there was sufficient evidence to merit a self-defense instruction. *See Gillis v. United States*, 400 A.2d 311, 311 (D.C.1979) (where victim had approached defendant, accused him of being with his girlfriend, and then reached into his pocket, self-defense instruction proper); *Reid, supra*, 581 A.2d at 361, 367 (where police found defendant arguing with others who outnumbered him while holding a knife, and defendant yelled to police officer, "I'm going to show these motherf— they don't be f—ing with me. I'll f— them up", a jury could reasonably find that he was trying to ward off an attack and the defendant was thus entitled to a self-defense instruction); *United States v. McCrae*, 148 U.S.App.D.C. 116, 118, 459 F.2d 1140, 1142 (1972) (error not to give self-defense instruction where the defendant testified that the victim had put his hands into his pockets and "was pointing something at me through his pocket," and

another witness testified that the victim looked like he was going to shoot).

*Bizarre reconstruction.* Thirdly, the government maintains that appellant's various theories of the case would have forced the jury to engage in a "bizarre reconstruction" of the evidence. However, appellant's self-defense claim was consistent with the government's principal theory that appellant was the shooter, and hence the government cannot seriously suggest that a bizarre reconstruction was required. But, even in the absence of such consistency, and to the extent that the government's argument is based on the defense refusal to state whether or not it was claiming that appellant was not present at the scene of the shooting, appellant's self-defense claim would not have required the jury to do more than doubt the credibility of the government witnesses about which man had fired the shot, a feat that was made possible by the extensive impeachment of the government's witnesses. Moreover, the jury was not even required to try to reconcile appellant's testimony with his defense since he did not testify.[18] *See Bostick, supra,* 605 A.2d at 917 n. 5 (fact that defendant did not claim self-defense when he testified and denied having a gun did not preclude instruction on provocation as defense to shooting by the defendant); *Guillard, supra* note 16, 596 A.2d at 62 (defendant's decision "to establish 'different or even contradictory defenses' does not jeopardize 'the availability of a self-defense jury instruction as long as self-defense is reasonably raised by the evidence'") (quoting *Reid, supra,* 581 A.2d at 367).[19]

The cases on which the government relies simply hold that where there is no evidence to support a lesser included offense or self-defense instruction, a defendant is not entitled to an instruction. Thus, in *Anderson v. United States,* 490 A.2d 1127, 1130 (D.C.1985), the defendant was denied an instruction for the lesser included offense of robbery where the government presented two eyewitnesses who testified that although they never saw the defendant with a gun, they had turned the instant they heard the shot and seen the defendant standing next to the victim the moment after the shooting; there was also medical evidence that the victim had been shot from one foot away. The defendant argued that he was entitled to an instruction because the government's evidence was compatible with a version that he had innocently (unarmed and unassociated with the assailant) stumbled upon the shooting scene, that some unidentified assailant had shot the victim, and that the defendant had then noticed the money and decided to take it and flee. *Id.* The court concluded that such a scenario "strain[ed] credulity to the breaking point," and would put the jurors in the position of having to effect a "bizarre reconstruction" of the evidence. *Id.* In the instant case, however, the government's evidence put at least two men in a position to have fired the shot. The other case cited by the government, *United States v. Crowder,* 177 U.S.App.D.C. 165, 170, 543 F.2d 312, 317 (1976) (en banc), *cert. denied,* 429 U.S. 1062, 97 S.Ct. 788, 50 L.Ed.2d 779 (1977) is also inapposite; here, it was the government's own evidence that supported the self-defense claim.[20]

---

**18.** Consequently, there is no reason to accept the government's invitation to adopt a rule that a defendant charged with felony murder is barred from raising a defense of self-defense where he claims he was not present at the scene of the crime. "We are simply unpersuaded by the government's suggestion," made with the concession that it can find no case authority for its suggestion, "that we should make the availability of an instruction on [self-defense] where the evidence justifies it subject to a requirement of consistency to which no other defense is subject." *Mathews, supra,* 485 U.S. at 66 (referring to the defense of entrapment).

**19.** In *Guillard, supra* note 16, 596 A.2d at 62 n. 1, the court rejected the view that *Hale v. United States,* 361 A.2d 212 (D.C.1976), stood for the proposition that a defendant was not entitled to a self-defense instruction where he did not admit he committed the crime, noting that the government's position was contrary to *Adams, supra,* 558 A.2d 348.

**20.** In *Crowder, supra,* the court upheld the denial of a proposed self-defense instruction because of the "fundamental objection" that the charge "would have contradicted Crowder's testimony and repudiated the theory of his defense." *Id.* at 170, 543 F.2d at 317. The defendant had

Despite the government's argument that instructing the jury on self-defense would have presented the jury with an "impossible task," the evidence in the instant case clearly does not require so great a leap of logic as that required in *Anderson* and *Crowder*. Giles' testimony about Knox's "Give me everything" response to Giles' demand for payment, as well as the exchange about Knox opening the seal of one drug packet, supported a reasonable inference that a dispute arose between the parties to the sale. Reasonable jurors could have fairly credited the testimony of both eyewitnesses, Giles and Holcomb, that appellant shot Knox only after Knox reached into his pocket. Coupled with the testimony of Officer Dicks and Ms. Duvall, a jury could reasonably infer that appellant was acting in defense of himself or Giles when he shot Knox.

*Creation of dangerous situation.* Finally, the government maintains that appellant was precluded from asserting self-defense because, by engaging in a dangerous felony, he "generated the necessity to kill." However, the cases relied on by the government are factually distinguishable, involving a defendant who found himself in a "safe harbor" removed from the conflict in which he had been engaged and who chose to return to the scene armed with a weapon and who thereafter instigated the trouble that ensued.[21] By contrast, appellant was neither the first aggressor, nor involved in any pre-existing dispute with Knox, and by leaving the apartment that morning with Giles for the purpose of selling drugs he is not viewed in law as thereby inciting or provoking an attack. The government's eyewitnesses testified that appellant did not go for his gun until Knox, who initiated the contact with Giles, put his hand in his pocket. Another government witness testified that appellant claimed that he had shot Knox because he was about to stick up one of his soldiers.

Nor are the armed robbery cases cited by the government controlling. In *Taylor v. United States*, 380 A.2d 989 (D.C.1977), the court held that the defendant was not entitled to a defense of another instruction where he argued that he shot the bank security guard in defense of his confederate who, all three government witnesses testified, had initiated the gunfire with the guard. 380 A.2d at 994. Because the confederate had no right of self-defense, it necessarily followed that the defendant could not claim defense of a third person.[22] Other cases relied on by the government— *State v. Warden*, 423 F.Supp. 611 (D.Md. 1976), *cert. denied*, 431 U.S. 906, 97 S.Ct. 1700, 52 L.Ed.2d 390 (1977), *Street v. State*, 26 Md.App. 336, 338 A.2d 72 (1975), and *Gray v. State*, 463 P.2d 897 (Ala.1970)—are

testified that he had been injured in a struggle with the victim for the gun, and that another person had grabbed the gun and shot the victim. Despite his testimony that he had not been the shooter, the defendant requested a self-defense instruction. The court noted that if the jury believed his testimony, he should have been acquitted because he was not the shooter, and hence, in view of his testimony, self-defense was not raised at trial. The court was "not impressed by the effort of counsel to conjure up a case of self-defense from the theory that the defendant had perjured himself in his testimony and that a shooting in self-defense may be inferred from various wisps of evidence." *Id.* (citing *Belton v. United States*, 127 U.S.App.D.C. 201, 206, 382 F.2d 150, 155 (1967)).

21. *See, e.g., Marshall v. United States*, 623 A.2d 551 (D.C.1992) (defendants returned armed to scene of earlier dispute and refused to leave); *Peterson, supra*, 483 F.2d 1222 (after verbal exchange, defendant went into house to retrieve and load pistol, then returned to scene of dispute and provoked victim, who was in car that was about to leave); *Nowlin v. United States*, 382 A.2d 14 (D.C.1978) (defendant went to complainant's home with shotgun to address preexisting tension, allegedly drove away, stopped further down the block, got out of car and fired shot at complainant); *see also Hurt v. United States*, 337 A.2d 215, 217 (D.C.1975) (regarding carrying pistol without a license charge, self-defense instruction denied because it "is inapplicable where a defendant carries a gun in public for a period of time *before* the actual danger arises as opposed to when one actually uses it in self-defense") (citing *Cooke v. United States*, 107 U.S.App.D.C. 223, 224, 275 F.2d 887, 888 (1960)).

22. In *Taylor, supra*, 380 A.2d at 994–95 n. 7, the court noted that there was no evidence that the person whom the defendant claimed he sought to defend had withdrawn from the confrontation with the security guard, but there was evidence that, although shot by the guard, he continued to shoot at the guard.

also distinguishable. Armed robberies, like burglaries, inherently involve aggressive conduct. The nature of illegal drug distribution is qualitatively somewhat different, at least insofar as first aggressor status is concerned, from armed robbery and burglary.

While illegal drug distribution has been designated by the Council of the District of Columbia as a dangerous crime for certain purposes,[23] the legislature has not eliminated the right to self-defense while perpetrating a felony. Moreover, in *Bostick, supra*, 605 A.2d at 919 n. 10, where the defendant was on the scene as an "enforcer," and he did not use his gun until he was assaulted, the court held that it was reversible error not to give a provocation instruction. The court concluded that a defendant did not forfeit the right to a provocation instruction by arming himself. 605 A.2d at 920. *See also Wilson v. United States*, 91 U.S.App.D.C. 135, 136, 198 F.2d 299, 300 (1952) (referring to "the exigencies of the occasion," giving rise to entitlement to a self-defense instruction). *See generally Peterson, supra*, 157 U.S.App.D.C. at 229 n. 61, 483 F.2d at 1232 n. 61 (observing that "[o]ne may deliberately arm himself for purposes of self-defense against a pernicious assault which he had good reason to expect," but the "true significance of the fact of arming can be determined only in the context of the surrounding circumstances") (citations omitted). As in *Bostick, supra*, 605 A.2d at 919–20, the evidence in the instant case was consistent with a conclusion by a reasonable jury that appellant used his weapon in response to a reasonably perceived threat of imminent harm.

Therefore, for these reasons, I conclude that the trial judge erred in refusing, ultimately, to give the requested self-defense instructions. The judge erred as a matter of law to the extent that he predicated his refusal on the ground that appellant was presenting inconsistent defenses and had failed to argue the self-defense claim to the jury during closing argument. *See Mathews, supra*, 485 U.S. 58 at 66, 108 S.Ct. 883 at 888; *Bostick, supra*, 605 A.2d at 917. Furthermore, the error was not harmless. The majority, in concluding that even if appellant had adequately preserved his request for the self-defense instruction any such error was harmless, makes no mention of the court's consistent reluctance to deem such error harmless. Although not adopting a per se reversal rule, our cases make clear that it is the rare case in which failure to instruct on a defense can constitute harmless error. *See Gray, supra*, 549 A.2d at 350–51 ("Although we need not adopt ... a *per se* rule that the failure to give an alibi instruction when one is warranted can never be harmless error, we find it difficult to imagine a case in which such an error could possibly be harmless"); *Gethers v. United States*, 556 A.2d 201, 204 (D.C.1989) (recognizing that it is "the extraordinary case in which *Gray's* strong presumption of prejudice would not apply"); *Stack, supra*, 519 A.2d at 154 ("reversible error when [trial court] refuses to present adequately a defendant's theory of the defense" that negates guilt); *West v. United States*, 604 A.2d 422, 428 (D.C.App. 1992) (same); *Graves v. United States*, 554 A.2d 1145, 1147 (D.C.App.1989) (same). Not only was no reference made during the jury instructions to self-defense or to the government's burden to disprove self-defense, but the government's evidence was not overwhelming in view of the substantial impeachment of the credibility of its witnesses.[24] Consequently, the government's suggestion is unpersuasive that, "to the extent appellant was acting on the mis-

---

**23.** *See* D.C.Code § 22–3201(g) (Supp.1992) (enhanced penalty for certain offenses committed with weapons); D.C.Code § 23–1331(3)(E) (1989 Repl.) (bail and pretrial detention).

**24.** The instant case is distinguishable from cases in which the court has found harmless error. In *McPhaul, supra*, 452 A.2d at 373–74, for example, where the trial judge erred by refusing to instruct on the use of nondeadly force, this court, noting that the trial judge had instructed the jury on self-defense, concluded that the instructions given "adequately focused the jury's attention on the self-defense issue" because they did not leave the jury with the impression that self-defense was only permitted when the defendant is threatened with death or serious bodily injury. *Id.*

taken belief in the need to use deadly force in 'self-defense,'" the trial judge's instruction on whether there were mitigating circumstances to second-degree murder sufficed to indicate that the jury necessarily rejected any provocation claim. *Cf. Mathews, supra,* 485 U.S. at 61, 108 S.Ct. at 885 (reversible error to deny entrapment defense instruction on ground defendant would not admit all elements of charged offense even where judge charged jury that the defendant's acts "were procurred *[sic]* by the overt acts of the principle *[sic]* witness of the government"); *White v. United States,* 613 A.2d 869, 877–78 (D.C. 1992) (adopting "no rational jury" standard of *Carella v. California,* 491 U.S. 263, 271, 109 S.Ct. 2419, 2423, 105 L.Ed.2d 218 (1989) (Scalia, J., plurality opinion) in applying harmless error standard to failure to instruct on element of offense).

Accordingly, I respectfully dissent and I would reverse appellant's convictions for felony murder and second-degree murder and remand the case for a new trial on those charges; otherwise, I concur with the majority in affirming appellant's other convictions.[25]

**25.** Appellant was convicted of second degree murder, D.C.Code § 22–2403 (Repl.1989), felony murder while armed, D.C.Code §§ 22–2401 and –3202 (Repl.1989), attempted distribution of cocaine, D.C.Code § 33–541(a)(1) (Repl.1988), and carrying a pistol without a license, D.C.Code § 22–3204 (Repl.1989).